35 N.J. Super. 215 (1955)
113 A.2d 843
AGNES SKAF, PLAINTIFF-APPELLANT,
v.
ZONING BOARD OF ADJUSTMENT OF THE CITY OF ASBURY PARK, A MUNICIPAL BODY, CITY OF ASBURY PARK, A MUNICIPAL CORPORATION, AND THE WOMAN'S CLUB OF ASBURY PARK, AN ELEEMOSYNARY CORPORATION, DEFENDANTS-APPELLEES.
Superior Court of New Jersey, Appellate Division.
Argued April 18, 1955.
Decided April 28, 1955.
*218 Before Judges GOLDMANN, FREUND and CONFORD.
*219 Mr. Alfred J. Skaf argued the cause for plaintiff-appellant.
Mr. Robert V. Carton argued the cause for defendants-appellees (Mr. Sidney J. Meistrich and Messrs. Durand, Ivins & Carton, attorneys).
The opinion of the court was delivered by CONFORD, J.A.D.
We have here to deal with an appeal by a neighboring resident and property owner raising the question of the validity of a variance from the restrictions of the zoning ordinance of the City of Asbury Park granted by the governing body of the municipality, upon recommendation of the local zoning board of adjustment, in favor of the Woman's Club of Asbury Park. The action under review was taken pursuant to R.S. 40:55-39(d) as amended. The amendment by L. 1953, c. 288 (approved July 27, 1953) does not bear upon the questions here presented.
An action in the Law Division complaining of the variance resulted in judgment for defendants, following submission and denial of a motion for summary judgment on behalf of plaintiff.
The property in question is a vacant lot at the southwest corner of Eighth Avenue and Emory Street, Asbury Park, somewhat irregular in dimensions because of the widening flare on the west side of Emory Street immediately before its intersection with the south line of Eighth Avenue. It was purchased by the Woman's Club of Asbury Park by contract conditioned on the successful outcome of its application for the presently disputed variance. The intention is to erect a clubhouse on the basis of plans submitted to the municipal bodies and represented as being designed to have the appearance of a home. The plot is in the R-2 zone wherein are permitted one- and two-family detached dwellings, churches, privately conducted schools for less than twelve pupils, the office or studio of a professional person not occupying more than 20% of the floor area of a building and free from display of goods or advertising other than a one square foot announcement *220 sign, the taking in of boarders (other than ill or feebleminded persons) provided there is no exterior display or advertising sign, and accessory uses customarily incident to the above. Clubhouses are not allowed in the zone but they are permitted in the R-3 zone, a corner end-section of which begins across the street (Eighth Avenue) from this property on the north.
The Woman's Club was incorporated in 1913 "to create an organized center of thought and action among women for their intellectual and social advancement and through united effort to assist in civic and philanthropic work." Most of its members are now non-residents of the city. It presently has no adequate housing for its activities. These include largely cultural affairs such as art exhibits, concerts, book reviews, etc. There are evening and junior departments which meet evenings, "with probably two or three dances a year," and a sub-junior department devoted to the activities of "teenagers." Alcoholic beverages are not to be sold or dispensed on the premises. The representation on its behalf before the zoning board was that it had outgrown its existing quarters, had searched diligently in Asbury Park for other quarters, but had found none which was both adequate in size and within the price the club could afford, other than the subject parcel.
The zoning board resolution recommending the variance makes these findings:
"1. That the parcel of land of the applicant The Woman's Club of Asbury Park is peculiarly different in size and shape from all other parcels in the zone wherein applicant's land is situate.
2. That the architectural design of the building proposed to be erected is in harmony with other buildings and structures in said zone.
3. That the use to which said building is intended to be devoted is similar to and in harmony with the use of other buildings and structures such as dwellings, churches and limited school facilities.
4. That the aims and purposes of The Woman's Club of Asbury Park tends to the educational, cultural, musical and other civic betterment of the community, and is not in conflict with uses now permitted in said zone.
5. The operation of the Woman's Club for all intents and purposes coincides with the operation of a private residence, in that no commercial *221 enterprise, amusement enterprise or other activities take place therein which will result in unusual noise or nuisance to the neighbors. The testimony produced before this Board indicated that the building will not be open beyond eleven o'clock in the evening, except on very rare occasions, and that meetings are usually held in the afternoon or early evening, and that the use, consumption or sale of intoxicating beverages will not be permitted upon the premises.
6. That the granting of the variance requested will be accomplished without detriment to the public good, and it will not impair the intent and the purpose of the zone plan and zoning ordinance."
At the trial in the Law Division plaintiff adduced the testimony of a real estate man in business in Asbury Park for 24 years who testified the subject property could "definitely" be used for residential purposes and that in his opinion the establishment of a woman's club there would depreciate the value of plaintiff's property. No proof of any nature beyond the record of the proceedings before the zoning board was introduced by defendants.
In Ward v. Scott, 11 N.J. 117 (1952), and Ward v. Scott, 16 N.J. 16 (1954), the majority of our Supreme Court has achieved a large measure of definitive resolution of wide schisms of approach toward the interpretation of the exception and variance provisions of the zoning statutes. This court is required to take it as settled by the first Ward case that the demonstration and finding of "hardship" or of any of the other exigencies specified in subdivision (c) of R.S. 40:55-39, as amended, as prerequisite for the grant of an outright variance by a zoning board, are not required when the application is for a recommendation by the zoning board of a variance to the governing body, under subdivision (d) "`in particular cases and for special reasons'" (11 N.J., at pages 121, 122); and see Monmouth Lumber Co. v. Ocean Township, 9 N.J. 64 (1952). The majority of the court met the view of the appellant and of the minority that such a conclusion would leave subdivision (d) bereft of necessary constitutional standards by which the zoning board should be guided in exercising its quasi-judicial function by pointing to the general zoning purposes set forth in R.S. 40:55-32 as the indicated chart of reference (11 N.J., at pages 125, *222 126). The court indicated no intention to relax the settled requirement that the action of the board of adjustment be founded upon specific findings grounded in the statutory standards, and, indeed, reversed the municipal action there involved for failure of adequate findings (11 N.J. 128, 129).
We are thus clearly required to appraise the findings made by the zoning board in the instant case, attacked on this appeal as ineffectual to support the challenged municipal action, by the measures both of the affirmative standards fixed by R.S. 40:55-32 and of the express proviso in the last paragraph of R.S. 40:55-39 proscribing action under the authority of the section unless it be found that the relief sought can be granted "without substantial detriment to the public good and will not substantially impair the intent and purpose of the zone plan and zoning ordinance." In this connection it is equally clear, and here vitally significant, that the "fixed and far-reaching protective restriction" just referred to represents a requisite in addition to, and not substitutionary for, the affirmative requirement of "special reasons" in aid of the zoning purposes set forth in R.S. 40:55-32 (11 N.J., at page 126).
Inspection of the "findings" of the zoning board here under review makes it apparent that No. 6 is in the express language of the terminal statutory requirement and that Nos. 2, 3, 5 and the last clause of No. 4 are but subordinate findings of fact in support of the statutory mandatory finding (No. 6) that the grant of the variance will be without detriment to the public good or impairment of the intent and purpose of the zone plan and zoning ordinance. They neither are nor purport to be reasons affirmatively explicative, as the very word "reason" necessarily implies, of the supposed promotion by the grant of variance of any of the various beneficent zoning desiderata mentioned in R.S. 40:55-32, such as lessening street congestion, securing safety from fire, panic, etc., providing adequate light and air, preventing over-crowding, conserving value of property, encouraging the most appropriate use of land, or even promoting health, morals or the general welfare (a word as to this latter, infra). Thus, while the *223 "reasons" mentioned aid in fortification of the necessary general finding of absence of detriment (No. 6), we must look to the sufficiency of the others if the action complained of is to be sustained.
Reason No. 1 is that the subject plot is different in size and shape from others in the zone. But nothing is said or found as to the relationship of the size and shape of the parcel to its utility or the absence thereof for any of the many uses to which it could lawfully be devoted under the ordinance. There was no proof before the board or in court that the property was not usable, for example, for residential purposes. The unrefuted proof offered at the trial is that it is. There is no evidential basis upon which one could conclude otherwise even if such an inquiry were issuable before us under the finding. The "reason" does not support the action.
We come, then, to consideration of so much of Reason No. 4 as recites that the purposes of the Woman's Club "tends to the educational, cultural, musical and other civic benefit of the community." The submission of this "reason" at once evokes the fundamental that special treatment by a zoning board must be based upon considerations "that inhere in the land sought to be built upon." Bassett, Zoning (1940), p. 124. The statute plainly does not contemplate that zoning boards may grant or recommend variance solely on the basis of the peculiar internal problems or salutary motivations or activities of the particular land owner. We have already found that the disputed variance was not granted to obviate a development of the plot in discordance with its existing utility. It is not shown or found in this or any other "Reason" that devotion of the plot to the proposed use will affirmatively advance or promote the zoning scheme of the municipality or that it is grounded in considerations related to the most appropriate use of the land, either of itself or in relation to a zoning plan covering other areas. Its selection by applicant resulted only from the consideration, irrelevant to zoning objectives, that other available parcels would cost it more than it could afford to pay.
*224 Nor can we properly conclude that the beneficent purposes of the club charter necessarily bring the proposed use within the "general welfare" standard of R.S. 40:55-32. That language is primarily connotative of the board reach to which zoning regulations generally may extend as a branch of the police power of the state. See Schmidt v. Board of Adjustment of the City of Newark, 9 N.J. 405, 414, 415 (1952). It obviously cannot mean that merely because a zoning board believes the activities of a particular organization are for the general welfare of the community (without regard to where it might be housed) it may lawfully, for that reason only and without basis in any peculiar relation between such activities and the nature and location of the specific plot, grant it special dispensation from the ordinance restrictions against use of land in a particular zone for such purposes. Any other view would conduce directly to the zoning anarchy and the "limitless exceptions" which the minority in the first Ward case feared (11 N.J., at pages 134, 142) and which the majority certainly had no desire to encourage (11 N.J., at pages 125, 126).
The nature of the findings sustained as adequate by the court in the second Ward case serve, by contrast, to illumine the inadequacy of those upon which the presently mooted action depends. The zoning board there found that the development planned under the proposed variance would be "for the public good" and would "benefit both the particular neighborhood and the town generally, whereas use of the land for residential purposes would not be feasible and would aggravate existing traffic problems" (16 N.J., at page 22). It was in the context of a review of findings like these, having some affirmative relationship to zoning objectives, and where the action was seen to be "in strict conformity with the procedural and substantive terms of the statute," that the Supreme Court emphasized the desirability of liberality in judicial review of municipal grants of variances (16 N.J., at page 23). And compare Mistretta v. City of Newark, 33 N.J. Super. 205 (Law Div. 1954), where a variance was *225 sustained as related to neighborhood problems of traffic and parking congestion.
The only demonstrable relation here between the action attacked and the statutory standards, on the evidence, points to its illegality. The statutory standard of "conserving the value of property" is offended by a use which the uncontested proof before us indicates would depreciate the value of nearby residences. It cannot be doubted that the daily congregation of considerable numbers of adults and young people in and about the clubhouse and the reasonably expectable increase of parked cars in the streets nearby would adversely affect the character and value of the area for the residential use for which the municipal legislature primarily zoned it.
There is a presumption that a zoning ordinance is altogether reasonable in its application to a specific parcel of property. Cobble Close Farm v. Board of Adjustment of Middletown Twp., 10 N.J. 442, 451 (1952). Concededly that presumption gives way to the presumption of validity and proper exercise of municipal discretion when a variance is granted. But such presumption is here overcome by plaintiff's plain showing of the absence of affirmative reasons, grounded in the evidence and related to any of the statutory zoning purposes, for the local action here impugned, without which that action cannot stand.
In view of our conclusion on the merits it has been unnecessary to consider whether this application was legally barred by the informal adverse action of the zoning board on a prior application for the same variance.
Judgment reversed and the cause remanded for entry of judgment in favor of plaintiff.