36 N.J. Super. 586 (1955)
116 A.2d 704
DANIEL J. MORIARTY, MORRIS E. SCHWARTZ AND MORTON GOLDSTEIN, PLAINTIFFS-APPELLANTS,
v.
JACK POZNER, SAM POZNER, BOARD OF ADJUSTMENT OF THE TOWNSHIP OF NORTH BERGEN, AND THE TOWNSHIP COMMISSION OF THE TOWNSHIP OF NORTH BERGEN, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 7, 1955.
Decided September 15, 1955.
*588 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. George Heftler argued the cause for plaintiffs-appellants (Messrs. Platoff, Platoff & Heftler, attorneys; Mr. Jacob Green, on the brief).
Mr. Joseph C. Glavin argued the cause for defendants-respondents Jack Pozner and Sam Pozner (Messrs. Burke, Sheridan & Hourigan, attorneys).
Mr. Nicholas S. Schloeder argued the cause for defendant-respondent Township of North Bergen.
The opinion of the court was delivered by CONFORD, J.A.D.
Plaintiffs, three residents and taxpayers of North Bergen, instituted an action in the Law Division to set aside a zoning variance in favor of property of the defendants Pozner by resolution of the governing body of the township pursuant to recommendation by the board of adjustment. They appeal from a judgment in favor of the defendants.
The property which is the subject of the present litigation consists of a 17-acre tract of land known as "Columbia Park" on the northwesterly side of Hudson Boulevard in North Bergen lying immediately northeasterly of the depressed highway approach to the Lincoln tunnel. The tract has a frontage of approximately 370 ft. on Hudson Boulevard, a rear dimension of 1,022 ft. and depths ranging from 628 ft. to 872 ft. It is bounded on the easterly side not only by Hudson Boulevard to the extent indicated but also by a very *589 large tract of land known as Schutzen Park which extends some 400 ft. to residential lots fronting on the next northerly east-west street, 37th Street. Schutzen Park also adjoins the subject property on its northerly side. The ground at the rear or westerly boundary of the property in question takes a sharp physical drop of about 30 ft. into a paper street called Grand Avenue which is undeveloped and unopened, and beyond that to the west lies a large tract of vacant rocky and hilly land owned by the township. There is no street access whatever to the locus in quo other than the frontage on Hudson Boulevard. The frontage is less than one-half of the length of the easterly sideline of the property.
The entire tract here in question, with the exception of the frontage on Hudson Boulevard to a depth of 100 ft., is zoned as a second residential zone or district, which permits dwellings of any type but prohibits business uses of any kind. The zoning map of the municipality indicates that Hudson Boulevard at the point in question and for a considerable distance southerly and northerly of the subject tract constitutes the easterly boundary line of the municipality. On the other side of the Boulevard at the point in question lies Union City, and, further north, the town of West New York. North Bergen flares out easterly to the Hudson River north of 70th Street to form the base of a reverse "L."
Examination of the zoning map of the municipality, reflecting the 1934 zoning ordinance, indicates that Hudson Boulevard through almost all of its length in North Bergen is "strip-zoned" for business to a depth of 100 ft. and that the land west of the 100 ft. is generally zoned "second residential." There are isolated portions of the municipality in which there are business zones to a depth of more than 100 ft. but the overwhelming proportion of business zoning in the municipality is 100-ft. strip-zoning of the kind mentioned, on Hudson Boulevard and on each of the several other main business thoroughfares of the municipality.
The portion of the subject property situated on Hudson Boulevard to a depth of about 100 ft. has for some time *590 been occupied as a used car lot. Westerly thereof, and dominating the southern half of the tract, is a large, poorly maintained pavilion structure rented for meetings and amusements. In former years there was a general amusement park on the property. Part of the adjacent Schutzen Park property is devoted to business and commercial uses of various kinds. Across Hudson Boulevard in Union City there is a Sears Roebuck Department Store and a large parking area accessory thereto. All of the Hudson Boulevard frontage in Union City across the street is zoned and predominantly devoted to commercial or industrial uses. There is some scattered residential development north of Schutzen Park on 37th Street, on the easterly side of Hudson Boulevard north of the intersection thereof with Bergen Turnpike, and on the nearest streets north of the property. Most of the residences lie several hundred feet or more from the property.
Most of the witnesses agreed that the general area in which the property lay is mixed residential and commercial, and, if the Union City area is taken into account, the overwhelmingly predominant use of the neighborhood is commercial. The variance here requested was for use of the portion of the tract zoned residential, together with the business zone area lying on Hudson Boulevard, for the construction of a large integrated shopping center with extensive accessory automobile parking areas. The primary basis for the application is the lack of accessibility to the tract other than through the frontage on Hudson Boulevard and the unsuitability of residential use of the area zoned therefor whether or not the owners retained their right to use the Hudson Boulevard frontage for business purposes, but particularly if they did. The evidence taken before the Board clearly establishes that use of the part of the tract zoned as residential for such purposes could be accomplished only by cutting across the Hudson Boulevard frontage, zoned commercial and described by an expert witness as very valuable commercial property, for ingress and egress.
*591 Real estate, architectural and planning experts testified on behalf of the owner of the property that the physical setting of the property described and the predominantly commercial character of the neighborhood led to the conclusion that a commercial use of the nature here proposed represented the highest and best use of the property in an economic sense. The planning expert stated that the construction of a residential project at the rear of the tract through a street to be opened from Hudson Boulevard would not constitute good planning. The view was expressed that a multi-unit housing development of the size appropriate to this tract would require more access, on considerations of safety, than the single Hudson Boulevard exit presently available. The planning expert testified that the best interests of the municipality as well as considerations material to the most appropriate use of the particular tract would be served by the contemplated project. He said there would be no impairment of the value of nearby residential property since traffic engendered would be self-contained. The defendants' realty expert said the shopping center would enhance surrounding land values.
Both of these experts were of the view that one reason for the 100 ft. strip-commercial zoning pervading this ordinance was that the present-day concept of an integrated shopping-parking center was new or unknown in 1934, when the ordinance was adopted. They felt that the proposed variance on the subject tract would, to that extent, correct the oversight.
An owner of the property testified that for years he has been unsuccessful in attempts to find a developer of the property for housing purposes although he has listed it with some of the leading real estate brokers in the east.
In opposition to the application plaintiffs submitted the opinion testimony of an architect that the size and topograhy of the land in question are well suited for a multi-story apartment project; that such improvement of the tract would blend with commercial development of the Hudson Boulevard frontage, subject to construction of an access road. The objectors' principal reliance before the zoning *592 board was upon the testimony of Herbert H. Smith, a planning consultant of unquestionably high qualifications. It was his opinion that the neighborhood is one of mixed use containing considerable residential development, including a large apartment development a few blocks south, off the Boulevard; that close transition from large apartments to commercial areas is common in the metropolitan area; and that the subject tract was well adapted for apartment house use from several standpoints. He stated the size of the tract was such that the proposed change of use would be alien to the intent of the ordinance and the statute and would be harmful to "what comprehensive [zoning] picture does exist," although he candidly volunteered that: "from my investigation I can't find any effort to develop a comprehensive zoning plan in this township." He also testified that the traffic problem on the Boulevard would be aggravated, not helped, by the variance proposed.
On these and other proofs the zoning board found the following favorable "reasons" for recommending the variance:
"1. By reason of the shape of the premises in question, it being only 370 feet in width on the Hudson Boulevard, while it is 1,022 feet on the rear and irregular in depth ranging for 628 feet to 872 feet, and by reason of the fact that the only means of ingress and egress to the large area of the property zoned for residential purposes is over or through the Boulevard frontage, which is zoned for business to a depth of 100 feet, it is not feasible or practicable to subdivide the area for residential purposes.
2. That the immediate neighborhood surrounding the premises in question, as well as the said premises in question, are presently devoted to business and commercial enterprises and are not developed to any extent for residential purposes. The zoning regulations of Union City, a portion of which is directly across the Hudson Boulevard from the premises in question, permit the development of the area for business, commercial and industrial purposes. In fact, such area is completely built up with industrial, commercial and business uses at the present time, including a very large building with off-street parking and service station owned by Sears, Roebuck & Company, as well as some of the largest used car lots in either municipality.
3. That the tract in question is bounded on the north by Schuetzen Park, an amusement center; on the east by Sears, Roebuck, used car lots, embroidery factories, automobile laundry, coat factory and *593 automobile salesroom; on the south by the depressed Lincoln Tunnel Highway from which there is no means of ingress or egress to the premises in question; on the west by a paper street known as Grand Avenue which is entirely unimproved and is approximately 30 feet below the grade of the premises in question, all of which create special conditions peculiar to the lot, imposing a burden on the owners if the present restriction is enforced.
4. That a great portion of the property in question will be paved and used for off-street parking, and consequently the erection of the shopping center will not materially change the existing traffic situation.
5. That in 1933 when the present zoning ordinance was passed, shopping centers had not yet come into existence and, therefore, no provision was made for them. Under the present zoning ordinance of North Bergen, there is no area in which a planned shopping center can be constructed because of the fact that the Township is `strip zoned' for business to a depth of only 100 feet, except in one or two isolated areas.
6. That the foregoing facts established by the evidence corroborates the conclusion of this Board upon personal inspection of the site conducted December 11, 1954 and the adjacent neighborhood, which reveals that the location of the lot, its appearance and the atmosphere created by surrounding uses made of the land, fit the pattern of the area for the development of the tract in question as a shopping center with off-street parking.
7. That from the plans submitted to this Board, as well as the testimony of the witnesses, the property in question will be improved by the erection of a brick, Colonial-type building, beautiful in design, and the area will be shrubbed, thus enhancing the appearance of the neighborhood in general; that the brightly-lighted used car lot presently on the Boulevard frontage of the property will be eliminated; that the public welfare of the Township will be served beneficially by the demolition of the existing unsightly structure which because of its age and lack of maintenance over many years, as well as its use for large public gatherings, has made it a source of public concern for some time.
8. That in granting the application, the value of the properties in the scattered residential area will not be detrimentally affected; that the maintenance of the open area for off-street parking will promote the general welfare of the community by lessening congestion on the streets and providing the maximum of light and air; that the plan for the development of the property in question is advisable as the most economical use of the property in the interest of the Township of North Bergen and in keeping with the intent and spirit of the zoning ordinance; that the erection of the planned shopping center with some 33 or 34 tenants will produce substantial retables for the Township, both real and personal, and will impose no financial burden for the erection of additional schools which would result if the premises were developed for residential purposes.
*594 9. It is found, as a matter of fact, that the relief sought is in the public interest and can be granted without substantial detriment to the public good and will not substantially impair the intent and purpose of the zone plan and zoning ordinance."
The Law Division held that under the proofs it did not appear that the board had acted "in an arbitrary or capricious manner" and that it could therefore not reverse the concurring grant of variance made by the governing body under N.J.S.A. 40:55-39(d).
On this appeal it is urged by plaintiffs that the findings and reasons set forth by the board of adjustment are legally insufficient, and, in any event, not substantially grounded in competent evidence; and that the variance (a) substantially impairs the intent and purpose of the zoning ordinance and (b) usurps "the legislative power to amend the ordinance."
A series of recent decisions by the Supreme Court charts the course by which local boards of adjustment are to proceed and the standards by which they are to be guided in passing upon applications for recommendations of variance "in particular cases and for special reasons" under N.J.S.A. 40:55-39(d), and, as well, elucidates the scope of judicial review in such cases. Monmouth Lumber Co. v. Ocean Township, 9 N.J. 64 (1952); Ward v. Scott, 11 N.J. 117 (1952); Ward v. Scott, 16 N.J. 16 (1954); Dolan v. DeCapua, 16 N.J. 599 (1954). If substantial evidence is adduced tending to show that the variance will subserve one or more of the zoning objects specified by the Legislature for municipal zoning legislation in R.S. 40:55-32 and that the relief can be granted without substantial detriment to the public good or substantial impairment of the intent and plan of the zone plan and ordinance, and specific findings in support of both of these prerequisites are made by the board, the variance will stand. Ward v. Scott, supra (11 N.J., at pages 125, 126); Ward v. Scott, supra (16 N.J., at pages 21, 22); cf. Skaf v. Zoning Board, etc., of Asbury Park, 35 N.J. Super. 215, 222 (App. Div. 1955); Izenberg v. Board of Adjustment of Paterson, 35 N.J. Super. 583 (App. Div. 1955). The existence of some degree *595 of hardship to the owner in the strict application of the ordinance to the property may also be given consideration by the local board in such cases and the hardship need not be of the kind or to the extent specified by the statute for relief under paragraph (c) of N.J.S.A. 40:55-39. Monmouth Lumber Co. v. Ocean Township, supra (9 N.J., at page 77); Dolan v. DeCapua, supra (16 N.J., at page 609). We do not understand that mere hardship, however, unaccompanied by the promotion of one or more of the zoning objectives stated in R.S. 40:55-32 will suffice in a paragraph (d) case.
Where there appears to be substantial satisfaction of the requisites stated the court is required to approach the issue of the legality of an exercise of local power with liberality and with "sympathetic recognition" of the peculiar familiarity of local officials with their community's characteristics and of the inevitable incidence of "exceptional situations which will justly call for individual variances within the prescribed legislative conditions and standards." Ward v. Scott, supra (16 N.J., at page 23). The case before us appears, in our judgment, to be one for judicial abstention from interference within these philosophies. There was here presented a carefully documented and adequately supported showing of discordance between the strict application of the ordinance and the most appropriate utilization of the tract of land involved. The parcel is uniquely circumstanced. An expert for the plaintiffs pointed out that the general operation of the North Bergen strip-zoning treatment of Hudson Boulevard, in contrast to its effect in this case, works out fairly for backland areas zoned for residences since, for the most part, the boulevard is regularly intersected by side streets and paralleled by thoroughfares to the west, permitting the street access which is essential to average residential development. The fact that there may be other specific cases, beside this one, where the general plan is functionally abortive because of conditions peculiar to the lot, and equally apt subjects for variance, *596 does not derogate from the propriety of the disposition by the board of the instant application.
Some of the findings of the board were in affirmative relationship with such zoning objectives and considerations as lessening street congestion, the character of the area, the peculiar suitability of the parcel for the use applied for, conservation of land values, the most appropriate use of the land and the general welfare of the community. There was, moreover, evidence of hardship to the owner in strict enforcement of the ordinance. Other findings contributed to the conclusion of the board that there would be no substantial impairment of the zone plan or detriment to the public good. We need not express any opinion as to the legal adequacy of the eighth finding, that relating to considerations as to tax ratables and municipal financial burdens. The others were legally apt and substantially supported by evidence. The insufficiency of one finding will not impair the efficacy of others which are adequate. Ward v. Scott, supra (16 N.J., at page 21). This is not, of course, to say that we are deciding on the merits of the opposing opinions and analyses of the experts in the case. It is not our function to do that or to substitute our judgment on such matters for that of the local administrative agency. We are but to look for compliance with statutory requirements and must affirm the local action where there is no demonstration of manifest abuse of authority or departure from law. Ward v. Scott, supra (16 N.J., at page 23).
We cannot concur in the argument of plaintiffs that the mere size of the subject parcel constitutes the variance an impairment of the zone plan. It is held as an entirety. It is an integral, undivided tract. The considerations upon which the grant was made appertained primarily to its relative inaccessibility as a whole unit. The zoning map does not bear out the contention that this parcel is, in effect, a district by itself. Nor are we persuaded by the contention that the adoption of the principle of strip-zoning in the 1934 ordinance made it an "integral part of the whole zoning plan that business uses should generally be confined to a depth *597 of 100 ft." We have already indicated that the original zone map shows scattered instances of commercial zoning of deeper than 100 ft. Grant of variance in this or other particular cases where the peculiarities of a given parcel cause the strict application of the "strip" plan thereto to conflict with statutory zoning desiderata, in the opinion of the competent authority, does not substantially impair the generality of the 100-ft. commercial limitation, assuming that to be basic to the plan.
Finally, plaintiffs' reliance on the recent Skaf and Izenberg cases, both supra, decided by this court, must be in vain. In the Skaf case there was held to be no demonstrated affirmative relationship between the variance granted and statutory zoning criteria. In the Izenberg case, the basic holding was that substantial support in the evidence for the findings of the board was lacking. Here neither of these deficiencies appears.
Judgment affirmed.