65 N.J. Super. 435 (1961)
168 A.2d 52
BENJAMIN BERN, PLAINTIFF-APPELLANT,
v.
THE BOROUGH OF FAIR LAWN, BERGEN COUNTY, ETC., ET AL., DEFENDANTS-RESPONDENTS, AND ROYAL INDUSTRIES CORP., A CORPORATION OF THE STATE OF NEW JERSEY, INTERVENER-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 14, 1960.
Decided February 16, 1961.
*438 Before Judges CONFORD, FREUND and KILKENNY.
Mr. Heyman Zimel argued the cause for plaintiff-appellant.
Mr. Edward M. Schotz argued the cause for intervener-respondent, Royal Industries Corp. (Messrs. Shavick, Thevos and Schotz, attorneys).
Mr. Thomas F. Dalton filed a statement in lieu of brief for defendants-respondents, the Borough of Fair Lawn et al.
The opinion of the court was delivered by CONFORD, S.J.A.D.
This case has been before the Board of Adjustment of Fair Lawn, the mayor and council of that borough, and the Superior Court, Law Division, twice. The last judgment of the court sustained a variance from the zoning ordinance of the municipality for the operation *439 of a car-washing station granted by the governing body upon recommendation of the board of adjustment. Plaintiff is a resident and taxpayer of the municipality, who operates a car-washing station in another part of the borough. The owner of the property in question, Royal Industries Corp., applicant for the variance, was permitted to intervene in the action by order of the court.
The property in question is a vacant tract of land with frontage of 180 feet on the southern side of Broadway in Fair Lawn, which is also New Jersey State Highway Route No. 4. It is in a district zoned "B-1 Business." From this point easterly somewhat over a mile, Broadway on both sides is strip-zoned in varying depths for business uses. Immediately abutting the property on the west is the right of way of the Erie Railroad Co., Broadway becoming depressed at that point to go under a railroad overpass. West of the right of way of the railroad, the southerly side of Route No. 4 lies in the neighboring Borough of East Paterson. But the opposite side of Broadway for a half mile west of the railroad is situate within Fair Lawn, the area nearest to the railroad being zoned "restricted industry" and the remainder residential "R-1-3."
Across the street from the subject property on Broadway are a lumber yard and a macaroni factory. The subject property occupies the block on the south side of Broadway between the railroad and Whitehall Street. Continuing easterly on that side of Broadway are found, in the following order, a gasoline service station, a parking lot, four stores, a theatre, an intersecting side street, Midland Avenue, a bowling alley and bar, a retail "discount house" and a number of super-markets. On the other side of the street, within 1,000 feet from the subject property, is a church. (The theatre is also within 1,000 feet of the subject property.)
The municipal zoning ordinance presents a glaring ambiguity as to whether car-washing stations, referred to by the respondents as auto laundries, are permitted in B-1 business districts, generally.
*440 Section VII of the ordinance deals with "Uses of Land, Building or Structures." The list of "uses permitted" thereunder in a B-1 district, besides any of a residential nature except multiple-family dwellings, and retail stores and shops, includes a number of specified miscellaneous types of use, and, in paragraph 11: "Bus terminals, public garages, automobile repair shops, automobile service stations at which general repairing is done, automobile parking lots, in all cases subject to the provisions of section IX A2 and A3." Car-washing stations and auto laundries are not mentioned as permitted uses for a B-1 district in section VII. However, section IX, "Supplementary Regulations," provides, in "A. Uses," "3. Garages and Filling Stations," as follows:
"In a B-1 or B-2 business district plans for the erection or structural alteration of any garage for more than five motor vehicles or of a filling station, shall be approved by the Planning Board. Said Board may require such change therein in relation to yards, location of pumps and buildings as it may deem best suited to insure safety, to minimize traffic difficulties and to safeguard adjacent properties. No part of any entrance to or exit from any public garage accommodating more than five motor vehicles, or any filling station, or any car washing station shall be located within 50 feet of a residential district. No permit shall be recommended for the erection of a garage for more than five motor vehicles, a motor vehicle service station or gas filling station or a car washing station if any part of the lot or plot involved is situated within a distance of one thousand (1,000) feet of a public school, a hospital maintaining as many as 15 beds for patients, a church, a theatre, a public library, public park or playground, or a fire station * * *.
No permit shall be recommended for the erection of a garage for more than five (5) motor vehicles, a motor vehicle service station or gas filling station or a car washing station in the business districts abutting Broadway from the Erie Railroad to the easterly Borough line, * * *." (Emphasis added)
We thus find, in section IX A 3, specific limitations upon the construction of car-washing stations notwithstanding such a use is not specifically included within the purportedly comprehensive category of permissive uses for a B-1 district in section VII.
*441 On December 1, 1958 the board of adjustment granted a variance to allow the construction of the car-washing station notwithstanding the structure was within 1,000 feet of both a church and a theatre, and within a business district abutting Broadway. This action followed a hearing at which a real estate expert and a planning expert testified, in substance, that the proximity of the railroad and the slope of the front of the property would depress its utility for retail store uses; and that a car-washing station would not be a greater detriment, in a zoning sense, than many of the presently permissible uses. The planning expert also testified that it was unusual for a zoning ordinance to provide distance limitations from public buildings for car-washing stations, and that limitations for garages and gasoline stations were usually less than 1,000 feet.
The resolution of the board stated: "There is a divided highway between this establishment and the church." It went on to compare such an establishment with various other types of business activity which could be conducted legally on the property without restriction, from the standpoint of the automobile traffic which might be generated thereby. It was further found that "the location of this property contiguous to the Erie Railroad makes it unsuitable for any other higher type of retail establishment, thus creating a hardship on the land."
Upon challenge of the variance by the present plaintiff and others the Law Division, Bergen County, set aside the variance as beyond the competence of the board of adjustment. That body had conceived itself as possessed of jurisdiction under the "hardship" provisions of N.J.S.A. 40:55-39(c) to grant the variance, rather than as being limited to a recommendation of a variance to the governing body, as provided in N.J.S.A. 40:55-39(d), where "in particular cases and for special reasons" a variance is sought "to allow a structure or use in a district restricted against such structure or use." In what is labelled a "final judgment" the court found car-washing stations to be a permitted *442 use in a B-1 district under section VII, paragraph 11; that the restriction of section IX A 3 contemplated an application for a recommendation for relief therefrom by the board of adjustment to the governing body under (d) of the statutory section cited; and held that the resolution of December 1, 1958 should be set aside and the matter remanded to the board of adjustment for further hearings.
At the hearing preceding entry of the foregoing judgment the judge made clear his view that the situation was one in which "special reasons" existed for a recommendation of a variance from the 1,000 foot and Broadway area restrictions, but that the cause would have to be remanded to make the procedure conform with a statutory (d) proceeding. He conceived there had been insufficient showing of a "hardship" case under a statutory (c) proceeding.
A new application was filed and a hearing was conducted before the board of adjustment June 30, 1959. The applicant relied upon the testimony adduced at the first hearing. The plaintiff submitted the testimony of a real estate expert, who testified, in effect, that the property was not unsuitable, economically or otherwise, for any of the multifarious uses to which the ordinance permitted it to be devoted as districted. He also considered that a car-washing station at that point would be a "substantial detriment to the public good" because traffic backs up at that point "underneath the trestle with the [traffic] light, now you are going to have egress there again and you are going to cause more tieup."
At the conclusion of the hearing, after a short recess, the board adopted a previously prepared typewritten resolution recommending the variance. It set forth the following reasons:
"1. The property in question which is located entirely within the Business Zone and fronts on the highway is bordered on all sides by highly commercialized activities.
2. Directly across the highway from the property is an Industrial Zone on which is located a lumber yard and a macaroni factory which restricts its desirability for the type of uses to which it may be put or the appropriate uses to which it may be developed.
*443 3. The property is so situated that the entire westerly boundary line is bordered by the railroad tracks utilized by the Erie Railroad for freight and passenger service and the attendant noise further limits its utilization for uses permitted under the ordinance.
4. The proposed use will not result in any diminution of property values to the surrounding area or to any affected property owners.
5. The proposed use will not result in any alteration of the essential character of the area and will be in harmony with the changes and the pattern of development that has taken place along New Jersey State Highway No. 4 since the inception of the ordinance.
6. The property is uniquely circumstanced in that it forms the borderline between the Borough of Fair Lawn and the Borough of East Paterson separated only by the Erie Railroad tracks and overhead. In the Borough of East Paterson, there is no restriction in its ordinance analogous to the provision of the ordinance of the Borough of Fair Lawn which prevents the use of property fronting along New Jersey State Highway No. 4 as an auto laundry.
7. The proposed use will generate less traffic and cause less congestion as compared with some of the other permitted uses for this zone such as a super-market, bowling alley, etc.
8. There is no danger of fire or explosion from the proposed auto laundry any more than any other existing business located within the area as there will be no flammable fiuids stored, housed or sold which is one of the primary concerns for the restriction in the ordinance.
9. Subsequent to the inception of the ordinance a concrete center island barrier has been constructed dividing the highway on which the property fronts, increasing the safety factor but rendering it less accessible to pedestrian traffic which might otherwise be attracted if another permitted type of use were located on the property. The island barrier dividing east and west-bound traffic and restricting the direction and flow of traffic eliminates any hazard to the church or theatre which are within a thousand feet of the property.
10. The property in question is set apart from the business and shopping area and enjoys a less favorable location because it fronts on the depressed portion of the highway where there is a stiff grade as compared with the shops up in the level area, coupled with the restriction in visibility from the overhead trestle or bridge at that point.
11. The granting of the variance would not be a substantial detriment to the public good and would not substantially impair the intent and purpose of the zone plan and zoning ordinance."
This action was approved by the mayor and council of the borough. A new complaint, to set aside the variance based upon the board of adjustment resolution of June 30, 1959, *444 was filed in the Superior Court, and a judge of the Law Division other than the judge who sat in the first proceeding, after argument, sustained the action of the municipal authorities

I.
We are presented first with the issue as to whether the relief sought by the applicant for variance involved zoning board action under subparagraph (c) or (d) of the statute, N.J.S.A. 40:55-39, or under both. The preliminary inquiry is whether the property is in a district "restricted against" a car-washing station. If it is, relief against the restriction to permit the use can be had only under (d), by the express terms of (d) and (c). (We put aside, for the moment, the question whether the distance restriction is relaxable under (c) rather than (d).)
Construction of the ordinance in respect of the problem presented is difficult. It is badly drawn. The conclusion of the Law Division in the first case was that the general use of car-washing stations is allowable in B-1 districts, such uses being regarded as intended to be subsumed under "automobile service station at which general repairing is done," as set forth in section VII, paragraph 11 of B-1 uses permitted. That view was based upon the otherwise apparently senseless supplementary regulations of car-washing stations in B-1 districts set forth in section IX A 3. In view of our later conclusion in this section of the opinion we forego any expression as to the soundness of the trial court's view on this point.
We appreciate the opposing argument of plaintiff that the last-mentioned references in the ordinance are meant to apply only where variances are sought, but there are obvious flaws in that approach in the light of the language employed. But the dispositive consideration against the contention that car-washing stations are not allowed in B-1 districts, generally, is the principle that a zoning restriction should not be interpreted to proscribe a given use of private *445 property unless it does so with reasonable clarity. Maplewood Tp. v. Tannenhaus, 64 N.J. Super. 80 (App. Div. 1960); Jantausch v. Borough of Verona, 41 N.J. Super. 89, 104 (Law Div. 1956), affirmed 24 N.J. 326 (1957). The argued exclusion is far from meeting that test.
However, this conclusion does not settle the ultimate question since the property must still be regarded as being in a district "restricted against" the use in question by virtue of the prohibition in section IX A 3 against a car-washing station "in the business districts abutting Broadway from the Erie Railroad to the easterly Borough line * * *." This provision is a geographical qualification of the assumed generally permissible use in a B-1 district. Inspection of the zoning map of the municipality shows that the subject property is in fact situated in a business district abutting Broadway, and between the termini specified. The use is thus a restricted one in the particular district designated. Consequently, relief against the particular indicated restriction must be sought before the board of adjustment under (d) of the statutory authority.

II.
We do not intend an extended examination of the question whether the evidence and the findings here bespeak sufficient "special reasons" for a (d) variance, see Ward v. Scott, 11 N.J. 117 (1952); Ward v. Scott, 16 N.J. 16 (1954); Andrews v. Ocean Twp. Board of Adjustment, 30 N.J. 245 (1959); Black v. Town of Montclair, 34 N.J. 105 (1961) (although we shall advert to the matter later herein), for we have concluded, as we shall explain in section IV hereof, that insufficient grounds were established or found for the board's permitting a variance from the 1,000 foot distance restriction in the supplementary regulations.
But in view of the earnestness with which the contention is advanced and the importance of the issue projected, we deem it advisable to express our disagreement *446 with plaintiff's argument that the "special reasons" required to be shown for a variance from a use restriction must as a matter of law be such as are necessarily equatable with the promotion of the "general welfare" of the community at large. The Andrews case, supra, and other cases cited in support of so narrow a proposition do not so hold. Adequate special reasons are any which, taken as a whole, are founded affirmatively in one or more of the zoning objectives set forth in R.S. 40:55-32, Ward v. Scott, supra (11 N.J., at pp. 125, 126). Further, the variance may not substantially impair the zoning scheme or cause substantial detriment to the public good (the "negative statutory criteria" mentioned in Grundlehner v. Dangler, 29 N.J. 256, 271 (1959)). The Andrews opinion, supra, expressly stated that the range of adequate special reasons under (d) could not be simply formulated (30 N.J., at p. 251), and held that the promotion of the welfare of the public at large was an adequate special reason, in that case through the needed amplification of facilities for the education of children who would attend the parochial school which the variance permitted to be established. Other affirmative zoning benefits from the variance were also cited (30 N.J., at p. 250). In accord: Black v. Town of Montclair, supra. Neither these cases nor any other we know of can be read to hold that promotion of the general welfare of the public at large is the only permissible special reason for granting a (d) variance. There are a number of other zoning criteria in R.S. 40:55-32 which may properly be resorted to for a (d) variance. Among the most obvious are appropriate land use, and relief from conformance with such uses of property, to which the district is restricted by the ordinance, as constitute an undue burden on the particular parcel not common to the entire district ("conserving the value of property and encouraging the most appropriate use of land throughout such municipality," R.S. 40:55-32).
While the degree of "exceptional and undue hardship" which must be shown to obtain a grant of variance *447 under (c) is greater than that required for a recommendation under (d), Ward v. Scott, supra (11 N.J., at p. 122); Grimley v. Ridgewood Village, 45 N.J. Super. 574, 581 (App. Div. 1957), certification denied 25 N.J. 102 (1957), yet the hardship of enforced confinement to limited zoning uses in a functionally inappropriate situation clearly remains an appropriate affirmative factor for consideration in a (d) case. Monmouth Lumber Co. v. Ocean Township, 9 N.J. 64, 77 (1952); Dolan v. DeCapua, 16 N.J. 599, 609 (1954); Andrews v. Ocean Twp. Board of Adjustment, supra (30 N.J., at pp. 250, 251: "* * * although hardship may constitute a special reason it [does] not exhaust the subject"). Both this court, Moriarty v. Pozner, 36 N.J. Super. 586, 595 (App. Div. 1955), and the Supreme Court in its opinion reversing that decision by a 4-3 vote, 21 N.J. 199, 210, 211 (1956), held that a variance may be granted under (d) for special reasons grounded in the undue burden of the restrictions on the particular property, whether physical or functional, not common to the district generally. The recent "nullification" of Moriarty by the Supreme Court in Black v. Town of Montclair, supra, does not go to the validity of the principle enunciated above, but rather to the implication in Moriarty, consonant with the dissents in both of the Ward v. Scott cases, supra, that a burden peculiar to the property is the only constitutionally permissible basis for a (d) variance (see, e.g., 11 N.J., at p. 134). The presently prevailing view of the Supreme Court is that any or all of the zoning desiderata mentioned in R.S. 40:55-32, particularly the promotion of the general welfare of the community as a whole, may constitute the foundation for a "special reasons" variance under N.J.S.A. 40:55-39 (d), always providing the "negative criteria" specified at the end of that section are also found satisfied.
It must be remembered that the variance power of agencies like our boards of adjustment was originally conceived as a "safety valve" designed to facilitate broad, restrictive use-zoning by area districts without explosively unjust effect *448 upon particular properties not fairly utilizable for the permissive use. Reps, "Discretionary Powers of the Board of Zoning Appeals," 20 Law and Contemp. Prob. 280, 281 (1955). The safety valve serves its purpose as well where variance relief to the burdened property owner is afforded by permitting an otherwise proscribed use, under (d), as where the relief needed is a variance from bulk or physical regulations, pursuant to (c).
Cobble Close Farm v. Bd. of Adjustment of Middletown Tp., 10 N.J. 442 (1952), cited by plaintiff, is not to the contrary. In considering an attack upon an ordinance as arbitrary in its application to plaintiff's property, the court pointed out that, in legislating a zoning ordinance, R.S. 40:55-32 calls, not necessarily for promoting the most appropriate use of every particular parcel of land (a veritable impossibility), but rather for action with a view to the character of the district, its peculiar suitability for particular uses, and conserving the value of property and encouraging the most appropriate use of land throughout the municipality (at pp. 452, 453). It was not there held that the latter type factors were not appropriate for consideration in relation to a particular piece of property, the subject of an application for a (d) variance. (There was, moreover, an express finding in that case that the structures involved might "reasonably be devoted to uses permitted by the zoning ordinance" (at p. 452).) Indeed, the very difference between an administrative proceeding for a variance for a particular piece of property and the legislative process in adoption of a zoning ordinance points up the necessity, so far as the former process is concerned, of applying the statutory zoning objectives in terms of their relationship to the zoning problem of the particular property. The language in R.S. 40:55-32 was specifically designed as a guide to drafting zoning ordinances. In using it for (d) variance purposes, under N.J.S.A. 40:55-39, as the Ward v. Scott cases require, due accommodation thereof must be made for the radically different function implicated. In *449 drafting an ordinance, for example, the average or general character or utility of all the property in a selected district is given consideration in regulating its uses. In passing on a variance, the character of the specific property and the reasonableness of restricting it to the specified uses comes under consideration.
Plaintiff also cites Mayer v. Montclair Board of Adjustment, 32 N.J. 130 (1960); Whitehead v. Kearny Zoning Bd. of Adjustment, 51 N.J. Super. 560 (App. Div. 1958); Schoelpple v. Woodbridge Twp., 60 N.J. Super. 146 (App. Div. 1960); Mocco v. Job, 56 N.J. Super. 468 (App. Div. 1959); and Suesserman v. Newark Bd. of Adjustment, 61 N.J. Super. 28 (App. Div. 1960). We regard none of these cases as in conflict with the views expressed above but all as entirely consistent therewith.

III.
The question whether an application of the undue-burden criterion for a (d) variance is here legally supportable on the evidence before and findings of the zoning board is one of some doubt. Admittedly, a sympathetic view is required to be exercised by the courts in appraising the justification for local variance action. Ward v. Scott, both cases, supra. However, we have just again been reminded "that variances constitute exceptional relief and are to be granted only sparingly and with great caution." Black v. Town of Montclair, supra (34 N.J., at p. 113). It is difficult to read the applicant's proofs as demonstrating with any persuasiveness that the property in question was not reasonably utilizable within the broad range of the various permitted uses in the district, which include, in addition to those mentioned earlier herein (merchandising stores and shops of every description, residential uses except multiple dwellings), parking lots, restaurants and eating places of all types, varied recreational facilities, personal service shops, animal hospitals and funeral homes, banks, offices, studios, hotels, etc.
*450 Nor do the findings of the board plainly so find. There seem to be, at most, findings that the physical situation, surroundings, proximity of the railroad, etc., "restrict" the desirability of the property for any of the permitted or appropriate uses and "limit" its utilization for such purposes; that the location is "less favorable" for shopping than parts of Broadway elsewhere. Other findings merely negate dangers of fire, undue traffic and the like, and find a car-washing station less objectionable than other uses which are permitted in the district.
Certainly a property owner is not entitled to a variance merely to serve the most profitable or economical use of the property if other less profitable uses are still reasonably feasible. See Beirn v. Morris, 14 N.J. 529, 534, 535 (1954). Moreover, it is not within its due province for a board of adjustment to adjudge the proscribed use as less deleterious than permitted uses, or as not more so, and to recommend a variance for that reason in the affirmative sense (although such considerations may be pertinent in relation to whether a variance would offend the "negative criteria" of the statute). This is an impermissible trenching upon the municipal legislative domain. Brandon v. Board of Com'rs of Town of Montclair, 124 N.J.L. 135, 150 (Sup. Ct. 1940), affirmed 125 N.J.L. 367 (E. & A. 1940). The municipal legislative use classification is presumptively valid, and it has not here been attacked by the applicant.
However, for reasons now to be set forth, we prefer to rest our determination that this variance was invalid on the grounds stated in the concluding section of this opinion.

IV.
The prohibition by the ordinance of car-washing stations within 1,000 feet of a church or theatre has not been lawfully by-passed in the proceedings under review. As noted, the reasonableness of the regulation is not attacked. *451 It has been assumed by the applicant to rest primarily upon considerations as to moving traffic, but this is not necessarily so. Heavy concentration of street parking incident to and near such publicly used buildings is another obvious policy consideration. Moreover, it will be noted that included in the distance restriction are various other uses involving the handling, service or storing of automobiles. Uses of this general automotive nature have been held to involve "risks to the safety of persons and of property and the general comfort and convenience" which may appropriately evoke special zoning treatment. Schmidt v. Board of Adjustment of City of Newark, 9 N.J. 405, 422 (1952). We cannot say the municipal legislature did not have in mind that car-washing stations present the same general problems. The declaration in Finding No. 8 by the board that there will be no greater danger of fire or explosion from a car-washing station than from other permitted uses goes to the wisdom of the regulation. A variance may not be based upon a conclusion by a board of adjustment that there is no factual justification for the regulation as an act of legislation. See Brandon v. Board of Com'rs of Town of Montclair, supra (124 N.J.L., at p. 141).
In the specific distance regulation involved here we do not have a use restriction common to a district. Therefore relief from that particular regulation could not legally be had under N.J.S.A. 40:55-39(d), but only under (c), covering variances from all restrictions except those prohibiting a type of use or structure in a district. But relief under (c) calls for a showing of an "exceptional" physical, topographic or other "extraordinary and exceptional situation or condition of such piece of property," in the light of which the strict application of the regulation would result in "peculiar and exceptional practical difficulties to, or exceptional and undue hardship" upon the owner. No such case was here even attempted to be shown, much less found by the board of adjustment. The burden argued to exist related only to the alleged unsuitability of the property for *452 other than car-washing uses. It was not argued that the application of the 1,000-foot distance regulation to this property would be unduly burdensome because of any physical or other conditions purportedly unique thereto.
The applicant argues that a center safety island has been constructed on Broadway since the adoption of the 1,000-foot distance restriction which the board of adjustment found (Finding No. 9) to have increased the safety factor and eliminated any hazard to the church or theatre within 1,000 feet. No findings of fact were made supportive of the latter conclusion.
It will be observed, first, that the center island runs the length of Broadway and is therefore an influence throughout the district, not peculiar to the parcel of land in question. If the presence of the island makes the restriction obsolete the appropriate remedy is by legislative amendment of the ordinance, not administrative variance in favor of a single piece of property. Beirn v. Morris, supra (14 N.J., at pp. 535, 536). The difference is not merely technical. It goes to the fundamentals of the distinction between general legislation and ad hoc administrative relief. The former process may not be exercised by a zoning board in the guise of the latter.
Second, the construction of the center island has not been shown to have eliminated the need for application of the policy of the distance regulation. The center island opens at street intersections and merely regulates the flow of traffic. It does not minimize or render less relevant, much less eliminate entirely, the other police power considerations mentioned above which presumably are subserved by the distance regulation.
Finally, no reason is made to appear why the policy safety considerations inherent in the distance regulation should be set aside when there are so many types of use of the property allowable under the ordinance which do not involve the transgression of the regulation consequent upon the placement of a car-washing station at that particular location.
*453 For any of the reasons stated, the recommendation for by-passing the distance requirement was beyond the lawful competence of the board of adjustment in the circumstances presented.
Judgment reversed.