THE STATE OF NEW JERSEY, EX REL. STEPHEN WASS, ZIGMUND IARKOWSKI AND JOHN DUDASH, RELATORS, v. CASPER IMPELLEZERI, JOHN TOMISH, Jr., MICHAEL WASLIN AND JOSEPH STELMA, DEFENDANTS.

THE STATE OF NEW JERSEY, EX REL. GEORGE PTASZ-KOWSKI, RELATOR, v. ANTHONY VEGLIA, DEFEND-ANT.

Submitted October 4, 1938—Decided February 4, 1939.

Before Brogan, Chief Justice, and Justices Bodine and Heher.

For the relators, *Sam Weiss*.

For the defendants, *Carman C. Reina*.

Per Curiam.

We have before us an information in the nature of a *quo warranto* to which the respondents filed a demurrer. Accepting the facts as alleged in the information, we find the following situation described:

The borough of Manville, by ordinance, on June 4th, 1929, created a Board of Health with a membership of five. Notwithstanding that the ordinance expressly provides "all members of said board hereafter appointed shall be appointed by the council and hold said office for the term of three years

except in the case of vacancies," it seems that appointment to the Health Board was accomplished by the mayor nominating the appointee and the council confirming the same. It then appears that on December 31st, 1936, the term of two members of the then board expired and that on the following day Mayor Onka nominated these two gentlemen for a new term of three years, but that their "appointments" were not confirmed by the council.

Parenthetically, it should be noted that on the same day, namely, January 1st, 1937, the council failed to elect a president in the council and that the mayor, as was his right in that contingency (Cf. Borough act of 1897, *R. S.* 40:88-2), appointed John Mack. Subsequently, and at another meeting, the council attempted to elect Francis S. Polonko, president of the council. This matter had the attention of the Supreme Court in the case of *Mack* v. *Polonko,* 118 *N. J. L.* 133, wherein Mack was declared to be the lawful president of the council and Polonko was ousted.

To resume—the Board of Health, upon the failure of the two "appointees" of the mayor to be confirmed, had only a membership of three. The statute requires at least five. *R. S.* 26:3-3. It next appears that on February 11th, 1937, the council met with Polonko, acting as president, and filled the vacancies in the Board of Health by naming John Tomish, Jr., and Casper Impellezeri, who are named respondents in this writ. At this juncture we call attention to the fact that while the information recites that Mayor Onka was present at that meeting and that "the majoriy of the council refused to act under the direction of the then elected Mayor Joseph Onka, or recognize John Mack, who was also present as president of the council," none the less, the minutes of that day's meeting, which appear as Schedule "B" attached to the information, recite that Mr. Mack and Mayor Onka were absent. Since these minutes are not impeached in any way we consider ourselves bound by them. *Campbell* v. *Hackensack,* 115 *N. J. L.* 209.

At this point we also call attention to the fact that since, by the ordinance, the appointing power is lodged in the

council and that since it appears by the minutes, made part of the information, a majority of the council voted for the appointment of Messrs. Tomish and Impellezeri, their right to membership in the Health Board would appear to be secure. But there is a further point in this case as revealed by the information. It appears that on February 25th, 1937, an ordinance was introduced at the council meeting to increase the membership of the Health Board from five to seven and that this ordinance was adopted on March 11th, 1937. Reference is made that Mr. Polonko presided. Whether the mayor was present does not appear—the inference is that he was not. By the ordinance, the right of the three hold-over members to continue as members of the seven-member Health Board, was recognized; Messrs. Tomish and Impellezeri were named as members of this new Health Board and two additional members were named.

The information continues: That on December 31st, 1937, the term of Mr. Sargent as a member of the Health Board expired, and that on January 28th the mayor "appointed," and the council "confirmed" one John Dudash as a member of the board. He appears in the case as a relator against Messrs. Tomish and Impellezeri, and the two new appointees under the seven-man Health Board ordinance, Messrs. Waslin and Stelma.

It then appears that January 18th, 1938, was a regular meeting day for the Board of Health and that no meeting was held because of the lack of a quorum. Another meeting was called on February 3d, 1938; again no quorum. The meeting scheduled for February 3d, is alleged to have been held over until February 4th. By what process it doesn't appear, but in any event the three relators, Wass, Iarkowski and Dudash, on the adjourned date, were present. It is said that the then mayor sent out notices for the meeting of February 4th, but that only those members just mentioned appeared. As a result of all this the three relators contend that they are the *de jure* Health Board (incomplete in number it is true), and they have gone ahead and organized. It also appears that the four remaining members of the so-called

seven-man Health Board, on February 17th, 1938, likewise organized and it is said that there are now two Health Boards acting in the borough, each with a different set of officers as well as inspectors, nurses, &c. So much for the information on file.

We think this case requires two observations: (1) Under the terms of the ordinance of 1929, creating the five-man Board of Health, there seems to be no question as to the right of Messrs. Tomish and Impellezeri to membership in that board. This is so by virtue of the ordinance itself which places the appointing power in the council and the council appointed these men to membership in the board. [(2) Whether the seven-man Health Board created by the ordinance of March 11th, 1937, is a legally organized body, we are unable to say from the state of case before us.] In any event this question cannot be tried out in *quo warranto* on this record. *Certiorari* is the normal remedy. In the circumstances the writ—Wass et al. *v.* Impellezeri et al.—will be dismissed with costs. The moving party is permitted to apply for *certiorari*.

There is a second information presented by George Ptaszkowski *v.* Anthony Veglia. The relator here claims that he is entitled to the office of secretary of the Board of Health and that it is unlawfully held by Veglia. The relator here is the secretary appointed by the relators in the preceding case, while Veglia is the secretary appointed by the respondents. The rights of this relator being dependent upon the outcome of the previous case, the writ will be dismissed without prejudice, and without costs.