35 N.J. Super. 583 (1955)
114 A.2d 732
DAVID W. IZENBERG, LEON LANSON, HARRY S. LA POFF, AND DAVID WAJDENGART, PLAINTIFFS-APPELLANTS,
v.
THE BOARD OF ADJUSTMENT OF THE CITY OF PATERSON, THE BOARD OF PUBLIC WORKS, AND MAYFAIR REALTY CO., INC., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 16, 1955.
Decided June 2, 1955.
*585 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Bernard G. Goldstein argued the cause for plaintiffs-appellants (Mr. Bernard D. Albert, attorney).
Mr. Saul M. Mann argued the cause for defendants-respondents (Mr. Ervan F. Kushner, attorney).
The opinion of the court was delivered by CONFORD, J.A.D.
This is an appeal from a judgment in the Law Division in favor of defendants in an action in lieu of prerogative writ attacking the grant of a zoning variance by the Board of Works of the City of Paterson upon recommendation of the local board of adjustment. The locus in quo consists of a plot of vacant land approximating 20,000 square feet on the southeast corner of Broadway and East 33rd Street, Paterson, situated in an "A" residence zone. In addition to miscellaneous other types of use, the zoning *586 ordinance of the municipality, as revised to February 29, 1936, permits in an "A" residence zone a "dwelling or tenement house" to accommodate no more than nine families per acre of land, or in proportion thereto. The plot here involved could therefore be the site of dwelling accommodations for not more than four families, within the ordinance. The variance allowed by the local authorities was for an apartment house for 54 families, not to exceed six stories in height, with provision for a basement parking garage accommodating at least 35 cars. Access to the garage was to be via a 35-foot driveway across the rear of the lot on East 33rd Street immediately to the south of the subject property, on which there stands an apartment house in the same proprietorship, said driveway leading to Thirteenth Avenue, the thoroughfare which bounds the block here involved on the south. The existing apartment house and the subject lot occupy the entire frontage on the easterly side of East 33rd Street, from Broadway to Thirteenth Avenue. The easterly boundary of the block is Wall Avenue. The objectors to the variance, plaintiffs in the Law Division and appellants here, own recently constructed one-family homes of considerably more than average cost and attractiveness on the westerly side of Wall Avenue. These properties abut the existing and proposed new apartment house sites.
Broadway is a major traffic artery of the city, with a center island. East 33rd Street, for a number of blocks north and south of the Broadway intersection, is the fairly consistent boundary line between an "A" residence zone to the east and a "B" residence zone to the west. The "A" zone is described as the finest residential neighborhood in Paterson, with East Side Park, three blocks distant, as its core. The existing apartment house was erected in 1928 and is a prior non-conforming use. On the northeast corner of the intersection referred to stands Temple Emanuel, a house of religious worship, built in 1928, and a conforming use in the "A" residence zone. On the southwest corner of the intersection is a small No. 1 business zone occupying perhaps 20% of a block otherwise zoned "A" residence. There are three or four *587 stores in the business zone on each of the intersecting streets. A large residence contiguous to the stores on the East 33rd Street side has been converted to hotel uses and is referred to in the record as a "motel." Except for the non-residential uses mentioned and a church and parochial school on East 33rd Street south of Thirteenth Avenue, the general area in all directions from the intersection of Broadway and East 33rd Street appears to be predominantly residential in character.
The minutes of the board of adjustment, introduced by plaintiff without objection at the trial in the Law Division, show that at the meeting of January 14, 1954 the hearing on the application for the subject variance was adjourned, with the consent of objectors present, to January 28, 1954. On that day testimony on behalf of the applicant corporation was adduced by an officer of the corporation and by a real estate expert. Counsel was heard on behalf of objectors. The board reserved decision. On February 11, 1954 it adopted a resolution recommending the variance on the grounds that "from the application and inspection of the land, we feel that this is the most appropriate use of the land" and that, in effect, the grant would not impair the intent and spirit of the zoning ordinance and plan or interfere with public safety, health, morals and general welfare. On April 20, 1954 the board of public works, referring to approval thereof by the planning board (which occurred the same day), concurred in the recommendation, whereupon the present action was instituted.
In the Law Division plaintiffs raised questions concerning the jurisdiction of the board of adjustment grounded in alleged deficiencies in the content of the notice of the application and as to the service thereof on property owners. They also attacked the grant of variance on the merits and for the reason that the findings of the board of adjustment were not supported by the evidence taken at its hearing, as reflected by the minutes. After hearing, the trial court on December 2, 1954 remanded the proceedings to the board of adjustment "so that they may properly set forth the special reasons upon *588 which they based the grant of the variance." On December 9, 1954 the board of adjustment made seven findings "from the facts presented at the hearing" in support of its recommendation, and on December 21, 1954 the board of public works again resolved its concurrence in the action. Apparently without any further hearing, the trial court entered judgment in favor of the defendants December 27, 1954.
We have considered the points raised by plaintiffs relating to alleged insufficiency in the notice and in its service. We incline to the view that since the plaintiffs did appear or were represented before the board of adjustment, made no objection to service there, were apprised of all of the particulars of the application and had full opportunity to contest it on the merits, the defects complained of were waived. See Wilson v. Township Committee of Union Township, 123 N.J.L. 474, 476 (Sup. Ct. 1939). We need not decide this point, however, in view of our firm conclusion that the judgment under review must be reversed and the variance ordered set aside for the more fundamental reason that there were no findings, grounded in evidence received by the board of adjustment at the hearing, legally warranting its recommendation.
In any matter confided to its quasi-judicial discretion by N.J.S.A. 40:55-39 the local board of adjustment must make findings not only legally founded in the statutory criteria, Ward v. Scott, 11 N.J. 117 (1952), but also "substantially grounded in competent evidence." Dolan v. DeCapua, 16 N.J. 599, 612 (1954); Stolz v. Ellenstein, 7 N.J. 291, 295 (1951). Since it is the exercise of the presumably expert administrative judgment of the local boards which is tested on the judicial review, Beirn v. Morris, 14 N.J. 529, 537, 538 (1954), our examination must perforce be confined to the record made at the hearing before those agencies and the admeasurement of the legality of their action must be solely by what was there adduced, not by matters dehors the record. Dolan v. DeCapua, supra (16 N.J., at page 612); Stolz v. Ellenstein, supra (7 N.J., at page 297). Applying these principles, our function is to inspect the record of the *589 hearing held by the board of adjustment on January 28, 1954 to see whether it supports the findings, and, further, this proceeding being under subdivision (d) of the section cited, to adjudge whether any findings of "special reasons," so disclosed to be sufficiently supported, comport with the general zoning criteria found in N.J.S.A. 40:55-32, Ward v. Scott, supra (11 N.J., at pages 125, 126); Skaf v. Zoning Board, etc., of Asbury Park, 35 N.J. Super. 215 (App. Div. April 28, 1955).
At the hearing, the testimony of Charles Bromberg, an officer of applicant, described the proposed apartment house and driveway in detail and he stated that "the premises are not suitable for private residences." There appears to have been no explanation for this conclusion nor any indication as to whether the property could not appropriately be devoted to dwellings or tenement purposes for up to four families, as permitted in an "A" residence zone by the ordinance, or for any of the miscellaneous non-residential uses permitted therein. The remainder of Bromberg's "testimony" was argumentative and non-factual. Mr. Vought, a real estate expert, testified that in his opinion "the purpose for which this land is presently desired is the most appropriate use to which the land could be put without detriment to the neighborhood" and that "the topography of the land was such that it lent itself most favorably to this use." There is no amplification of the reference to "topography." Photographs offered in evidence in the Law Division show a slight easterly rise in the terrain of the plot. The minutes of the meeting refer to discussion by board members concerning new legal requirements for provision of off-street parking for construction "in certain areas." There was no other factual data adduced either by applicant or board.
The amended findings of the board of adjustment were as follows:
"(1) That the premises in question located on the southeast corner of Broadway and East Thirty-third Street, Paterson, New Jersey, are entirely unsuitable for `A' residence zone purposes; that immediately adjacent to the aforementioned plot is a large apartment *590 house, that across the street in a westerly direction are nine stores located in a business zone, that immediately across the street is a motel, that across the street on the northeast corner of East Thirty-Third Street and Broadway is located Temple Emanuel and its halls, that approximately 18,000 cars pass the intersection on which the premises are located, daily, as a result of all of which the land has become entirely unsuitable for the aforementioned `A' residence zone purposes;
(2) That the land cannot be used to any advantage for the purposes intended in an `A' residence zone and the land has been a problem to the Planning Board for the past six years. The master plan presently before the Planning Board of the City of Paterson contemplates the use of the premises for `D' residence zone, so that an apartment house may be erected thereon. The erection of an apartment house on the premises would be in harmony with the adjacent property, whereas, it would be uneconomic for anyone to use the land for `A' zone purposes;
(3) From the application filed in this matter a careful inspection of the land and a consideration of the testimony of all parties, we feel that the most appropriate use of the land would be for the erection thereon of an apartment house;
(4) The safety, health, morals and general welfare of the public will not be interfered with and the granting of the variance will not impair the intent and spirit of the zoning ordinance and plan;
(5) The enforcement of `A' zone restrictions on the property would impose an impossible burden on the owner and make it impossible for it to ever use its land to any advantage. A study of the land and its surrounding area and conditions, together with the master plan, indicates that the erection of an apartment house on the lands would fit the pattern of the area in its development;
(6) The future needs of the area will best be served by the erection of an apartment house on the lands;
(7) In granting the application, the value of properties in the surrounding residential areas in all directions, will not be detrimentally affected, will promote the general welfare of the community and will be the most economical use of the property in the interest of the City of Paterson and in keeping with the intent and spirit of the zoning ordinance."
The conclusion in finding No. 1 that the premises "are entirely unsuitable for `A' residence zone purposes" is not supported by the testimony adduced before the board. That bore only on use for "private residences," apparently having reference only to one-family homes. There is no indication that either the witness or the board considered the utility of the lot, for example, for a four-family dwelling. Compare the impression given the Supreme Court in prior litigation *591 affecting these premises that this lot could be improved under the ordinance only by a one-family home. Conlon v. Board of Public Works, Paterson, 11 N.J. 363, 367 (1953). Permissible "A" residence zone purposes also include offices in dwellings of physicians, dentists, musicians, churches, schools, libraries, parks, playgrounds, firehouses. The reference to the existing adjacent apartment house, which is a prior non-conforming use, lends little support to the board's conclusion. See Lumund v. Board of Adjustment, Rutherford, 4 N.J. 577, 585 (1950); Shipman v. Town of Montclair, 16 N.J. Super. 365, 370, 371 (App. Div. 1951). There was no proof before the board as to the 18,000 daily traffic count. The intersection is a busy one but there is nothing to suggest it was not of that character when the zone lines were drawn. The temple conforms to the zone and the stores and "motel" across the street are in a zone with which they comply. Zones must have beginning and terminating points and if the existence of divergent uses across zone boundary lines were taken per se as an appropriate basis for a variance the entire zone plan in any municipality might well crumble by chain reaction. Scaduto v. Town of Bloomfield, 127 N.J.L. 1, 4 (Sup. Ct. 1941); Rexon v. Board of Adjustment of Haddonfield, 10 N.J. 1, 9 (1952); Ward v. Scott, 11 N.J. 117, 128 (1952).
As to the board's finding No. 2 that "the land cannot be used to any advantage for the purposes intended" in an "A" residence zone, we have seen that the evidence before the board falls far short of the scope of the finding. The reference to a master plan not yet adopted is not helpful, nor was it referred to at the hearing. That the proposed apartment house "would be in harmony with the adjacent property" is true as to one adjoining parcel, but plainly not as to the others. And the one with which it would harmonize is a prior non-conforming use. There was no proof before the board whatever to support the comprehensive finding that "it would be uneconomic for any one to use the land for `A' zone purposes." And the limited legal consequences of such a factor, were it supportable in fact, have frequently been adverted to. Berdan *592 v. City of Paterson, 1 N.J. 199, 205 (1948); Ramsbotham v. Board of Public Works of Paterson, 2 N.J. 131, 135 (1949); Barbarisi v. Board of Adjustment of Paterson, 30 N.J. Super. 11, 18 (App. Div. 1954).
Finding No. 3 is that "the most appropriate use of the land would be for the erection thereon of an apartment house." This is said to be based upon "a careful inspection of the land" and the testimony of the parties. So far as the testimony goes, there was a supporting expert conclusion, but, as noted, that suffers in weight from an apparent failure to consider the possibility of certain other permissible uses. If, by "most appropriate," the board means "most profitable to the owner," our prior observation is applicable. In reference to the board's inspection, it was requisite, as a matter of due process, that the board state for the record during the hearing what facts the inspection disclosed so that the adversely affected parties might have an opportunity to meet them. Dolan v. DeCapua, supra (16 N.J., at pages 609, 610); Giordano v. City Commission of Newark, 2 N.J. 585, 588, 589 (1949); cf. Mazza v. Cavicchia, 15 N.J. 498, 515 (1954). These observations are also applicable to the statement by the board in finding No. 5 as to its conclusions from "a study of the land and its surrounding area and conditions." The first part of that finding, that existing restrictions would make it "impossible" for the owner "to ever use its land to any advantage" is, as already noted, not supported in the evidence.
Finding No. 6, that "the future needs of the area will best be served by the erection of an apartment house on the lands," is totally unfounded in the evidence adduced. If it were, it would have weight. Ward v. Scott, 16 N.J. 16, 22 (1954). The general statement in finding No. 7 that the variance "will promote the general welfare of the community" is, without some particularization supported by testimony, of little if any significance. Skaf v. Zoning Board of Adjustment, Asbury Park, supra.
The remaining content of the findings consists, in effect, of the mandatory statutory conclusion that the variance *593 will be without detriment to the public good and will not substantially impair the intent and purpose of the zone plan and zoning ordinance, N.J.S.A. 40:55-39, and of supporting conclusions negativing detriment to the surrounding area. Passing the absence of proof as to the last matter, and, indeed, the existence of cogent evidence to the contrary submitted by plaintiffs, it is to be observed that while these general negative conclusions are a necessary condition for a grant of variance, they do not warrant dispensation with affirmative findings of "special reasons" for the variance grounded in the statutory zoning criteria and supported by evidence. Skaf v. Zoning Board of Adjustment, Asbury Park, supra.
We are thus constrained to conclude that the grant of variance was not founded upon findings having a warrant in the proofs submitted, and was consequently illegal. We are not unmindful of the admonition of the Supreme Court in Ward v. Scott, 16 N.J. 16, 21 (1954), that the court must "look at the entire picture and consider the reasons in their aggregate"; and that "it is in nowise controlling that one or more of the reasons standing alone would not be legally sufficient." We appreciate that the several elements of comparative economic advantage, adjacency to commercial or non-conforming uses, inutility for any permissible zoned use, traffic, and needs of the surrounding area, might, in combination, if factually supported, lawfully sustain the discretionary relief under the statutory aegis of the zoning board, though one or more, alone, might not suffice. But the need for factual support in the record is fundamental and indispensable. Some of the physical facts apparently relied on by the board are undisputed, but the conclusions arrived at either are not shown to be warranted by or drawn from such facts alone, or cannot have the legal force imputed to them, for reasons we have mentioned.
Defendants strongly press the contention that the minutes of the board of adjustment do not fully exhibit the testimony taken by it on this application and that it was incumbent upon plaintiffs either to have a stenographic record made of the hearing or to take depositions in the *594 Law Division to establish what the full record comprised. But we conceive the shoe is on the other foot. Plaintiffs take the position that the gist of the testimony submitted before the board is reflected by the summary in the minutes and that its content needs no further substantiation. Defendants do not point to any particular proof, or kind of proof, claimed to have been adduced before the board and omitted from the minutes. They did not object to the offer of the minutes in evidence in the Law Division. Certainly it is in the highest degree salutary that a complete stenographic record be made at a contested hearing before any quasi-judicial body. Dolan v. DeCapua, supra (16 N.J., at pages 611, 612). But it has not been held that a full stenographic transcript is a jurisdictional prerequisite for board of adjustment action. See R.S. 40:55-38, requiring "minutes" of proceedings and "records" of examinations. The minutes here taken and offered in evidence purport to be a full recital of the substance of the proceedings, including the testimony of witnesses. They are entitled to the presumption of regularity and completeness on their face. Wass v. Impellezeri, 122 N.J.L. 213 (Sup. Ct. 1939); Campbell v. City of Hackensack, 115 N.J.L. 209 (E. & A. 1935). See 5 McQuillin, Municipal Corporations (3rd ed. 1949), § 14.03, p. 7. It was open to any party claiming they were incomplete to "settle the record" as to what transpired before the board by depositions in the Law Division. Beirn v. Morris, supra (14 N.J., at page 538). That not having been done in this case, we take the record as we find it. See Stolz v. Ellenstein, supra (7 N.J., at page 298). Precisely the same position was taken in a parallel situation involving proceedings before the same board of adjustment by the Supreme Court in Berdan v. City of Paterson, supra (1 N.J., at page 205).
Though the presumption of completeness of the record remains unimpaired, the usual concomitant presumption of correctness of administrative action taken pursuant thereto falls when there is disclosed from the record, as here there was, an absence of conditions prerequisite to lawful action. Hasbrouck Heights Hospital Association v. Borough of Hasbrouck *595 Heights, 15 N.J. 447, 454, 455 (1954); see Marrocco v. Board of Adjustment of Passaic, 5 N.J. Super. 94, 98 (App. Div. 1949), certification denied 3 N.J. 379 (1949).
Judgment reversed and the cause remanded with directions for entry of judgment in favor of plaintiffs setting aside the grant of variance.