59 N.J. Super. 154 (1960)
157 A.2d 508
MARTIN BATTAGLIA AND SANTA BATTAGLIA, HIS WIFE, PLAINTIFFS-APPELLANTS,
v.
WILLIAM O'BRIEN, CITY OF ATLANTIC CITY, A MUNICIPAL CORPORATION, ET ALS., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 17, 1959.
Decided January 20, 1960.
*157 Before Judges PRICE, GAULKIN and FOLEY.
Mr. John Lloyd, Jr., argued the cause for plaintiffs-appellants (Messrs. Lloyd, Horn, Megargee & Steedle, attorneys; Mr. John Lloyd, Jr., of counsel).
Mr. Murray Fredericks argued the cause for defendant-respondent, City of Atlantic City and Louis F. Watson, Superintendent of Buildings of the City of Atlantic City.
Mr. Isaac C. Ginsburg argued the cause for defendant-respondent Board of Adjustment of the City of Atlantic City.
Mr. Daniel Bell, Jr., argued the cause for defendant-respondent, William O'Brien (Messrs. Kirkman, Mulligan, Bell & Armstrong, attorneys; Mr. Daniel Bell, Jr., of counsel).
Mr. Benjamin A. Rimm argued the cause for defendant-respondent, Raymond Wochner.
The opinion of the court was delivered by PRICE, S.J.A.D.
Plaintiffs appeal from a judgment in the Superior Court, Law Division, dismissing on its merits their action in lieu of prerogative writs, brought to review the legal propriety of a resolution of the Board of Commissioners of Atlantic City approving a zoning variance recommended by the board of adjustment. The variance authorized defendant William O'Brien to construct an addition to his automobile service station in an area where such construction was normally prohibited by the local zoning ordinance. Appellants contend that the court erred in determining that the requirements of N.J.S.A. 40:55-39(d) were satisfied, and further erred in holding that despite the loss of the minutes of the meeting at which the O'Brien application was heard, and despite the loss of the transcript of the stenographic *158 record then taken, there were "sufficient facts available from the resolution, correspondence and exhibits" to justify the city's action.
Preliminarily it is important to note that a marked and unusual divergence exists in the respective contentions of the defendant board of adjustment and the defendant municipality on this appeal. Although uniting in their support of the aforesaid judgment, the attorney for the defendant board of adjustment and the attorney for the defendants City of Atlantic City and its superintendent of buildings urge diametrically opposing views as to the section of the Zoning Act under which the O'Brien application was made, prosecuted and granted, and by which they contend its granting can be deemed justified. The attorney for the board of adjustment contends that it acted under N.J.S.A. 40:55-39(b) and that its action was final and conclusive, while the attorney for the city and the superintendent of buildings rejects that concept and contends that the application was prosecuted under N.J.S.A. 40:55-39(d) and that the action taken by the board of adjustment and approved by the governing body was recommendatory only.
Defendants seek to sustain the aforesaid judgment in their favor not only on the basis on which the trial court rested its decision, but defendant board of adjustment specifically further contends that plaintiffs' action should have been dismissed as not brought within time under R.R. 4:88-15(b)(3), and the defendant City of Atlantic City claims that under R.R. 4:88-15(b)(4) plaintiffs' action should have been dismissed.
The record reveals the following factual situation.
Plaintiffs own a four-story apartment dwelling house located at 38 North Iowa Avenue in Atlantic City. They do not reside at that address. Defendant O'Brien owns the property at 40 North Iowa Avenue, contiguous to and northerly of plaintiffs' property. Prior to May 29, 1959 a four-story apartment dwelling house, similar to that of plaintiffs, was located at the latter address. Immediately adjacent *159 thereto, and northerly thereof, O'Brien owns and operates an automobile service station at 42 North Iowa Avenue (otherwise designated as 2800 Arctic Avenue), at the intersection of Arctic and Iowa Avenues. The property of plaintiffs at 38 North Iowa Avenue and the property of O'Brien located at 40 North Iowa Avenue are in an area designated in the Atlantic City zoning ordinance as Business Zone No. 2.
Desiring to increase the size of his service station by constructing an addition thereto in the area then occupied by the aforesaid building at 40 North Iowa Avenue, defendant O'Brien on April 23, 1958 filed an application for a zoning variance with the defendant board of adjustment. The hearing on the application was held April 30, 1958. Plaintiffs and several other owners of property within 200 feet of O'Brien's service station, who had been notified of the hearing pursuant to N.J.S.A. 40:55-44, were present and voiced their opposition to the proposed variance. Testimony was taken and a transcript of a stenographic record of the proceedings at the hearing was later filed in the office of the secretary of the board of adjustment.
Subsequently, the secretary of the board of adjustment sent a letter dated July 15, 1958 to plaintiffs' then attorney, which letter read as follows:
 "Re: O'Brien
 2800 Arctic Avenue
 Atlantic City, New Jersey
 (Gas Station)
Dear Mr. Goldberg:
At a recent meeting of the Zoning Board of Adjustment, the Board agreed to allow a variance to the above reference [sic] gas service station."
Following the receipt of this letter plaintiffs, on August 8, 1958, employed their present attorney to seek legal redress in the matter. On the basis of the action stated in the letter of July 15th to have been taken by the board of adjustment, plaintiffs' attorney immediately prepared a complaint in the Superior Court challenging that action and, on the morning *160 of Saturday, August 9, 1958, mailed it to the Clerk of the Superior Court. The attorney recalled the complaint on Monday, August 11, 1958, because, as he later stated in an affidavit submitted to the trial court, he "determined that further time was available" to him for "the taking of the appeal" and that he "also determined that changes should be made in the complaint" which he had sent to the court clerk. On Tuesday, August 12, 1958, he examined the file relating to the O'Brien application in the office of the secretary of the board of adjustment. At that time the file included the minutes of the aforesaid April 30, 1958 meeting as well as the aforesaid transcript of the hearing.
During his examination of the file plaintiffs' attorney discovered a copy of the following letter dated July 22, 1958 from the board of adjustment to the board of commissioners:
 "Re: Application for service station
 40 North Iowa Avenue  2800 Arctic
 Atlantic City, N.J.
Gentlemen:
An application for a building permit for a one story cinder block and porcelain enamel service station building was refused by Louis F. Watson on February 19, 1958. An application was thereupon filed with the officer of the Board of Adjustment on April 30, 1958, and a hearing was held before Benjamin Seigel, acting Chairman, Mrs. Nadine Carpenter, and Harry Brown, members of the Board.
The applicant presented testimony setting forth reasons for the allowance of the variances and to permit an exception as requested. After considering all of the testimony the Board of Adjustment unanimously recommends to the governing body of the City of Atlantic City that a variance should be allowed to demolish the old and erect a new gas service station on the premises known as 40 North Iowa Avenue, Atlantic City, New Jersey, for the following reasons.
All repair, servicing, and washing will be done inside a modern bay  presently some work is being done outside and if one car is getting gasoline the second car must wait partly on the sidewalk and partly in the street, blocking oncoming traffic. The erection of a modern service station will eliminate noise, present a generally cleaner area, as well as eliminate an unsafe traffic condition that now exists.
The board of adjustment finds that a modern gas station can be erected on the above mentioned premises without substantial detriment *161 to the public good and it will not substantially impair the intent and purpose of the Zoning Plan and Zoning Ordinance.
These recommendations represent the unanimous decision and consent of the three members of the Board of Adjustment who were present and heard all of the evidence for and against the variance."
Plaintiffs had not been advised that such a letter had been sent nor that any action had been taken on the O'Brien application other than that reflected in the aforesaid letter of July 15, 1958. The letter of July 22, 1958 contained no reference to the definitive action of the board of adjustment reflected in the letter of July 15, 1958.
On August 12, 1958 plaintiffs' attorney wrote the following letter to the attorney for the City of Atlantic City:
"We represent Martin Battaglia, owner of premises #38 North Iowa Avenue, in opposition to the application of William O'Brien for a variance from the zoning ordinance for the benefit of his property at #40 North Iowa Avenue.
I am informed that the Board of Adjustment has recommended that the City Commission should grant the requested variance.
I would like to be heard when this matter comes before the City Commission, so I would appreciate it if you would let me know when that will happen. I assume that it would not come up before some time in September at the earliest."
The city attorney answered as follows under date of August 13, 1958:
"I have your letter of August 12, 1958 with reference to the recommendation for variance which the Board of Adjustment has made to the City Commission.
As you no doubt know, the cases in New Jersey have held that there is no obligation upon the City Commission to hold a hearing when and if it should decide to approve a recommended variance, and by the same token, there is no obligation upon the City Commission under the cases decided to give notice that the Commission intends to act on the recommended variance.
However, I certainly shall bring your letter to the attention of the Commission and suggest to it that if it decides to proceed with the recommendation, that you request the opportunity to speak before the Commission, and I am reasonably certain the due consideration will be extended to you."
*162 On the same day the attorneys for plaintiffs sent a letter by certified mail to defendant O'Brien, with a copy to O'Brien's attorney, advising that plaintiffs intended to contest any action that might be taken "with respect to a zoning ordinance variance, and particularly the demolition of premises #40 North Iowa Avenue to enlarge the gas station * * *"; that it had been learned that "though the Board of Adjustment has agreed to recommend the variance to the City Commission," the latter "has taken no action upon it"; that the purpose of the letter was to give O'Brien notice that any action taken by him "with respect to the demolition" of the building "or the enlargement of the service station" would be at his risk and that the notice was given so that it might not be later contended that plaintiffs "condoned or otherwise consented or agreed" to the proposed enlargement of the service station.
No action on the O'Brien application was taken by the board of commissioners until April 9, 1959, more than eight months after the board of adjustment had acted in the matter, at which time a resolution granting the variance was adopted and defendant O'Brien was notified thereof. The resolution was as follows:
"WHEREAS, an application for a building permit to extend the gasoline service station heretofore erected at 42 North Iowa Avenue, Atlantic City, New Jersey to include an adjoining property at 40 North Iowa Avenue, Atlantic City, New Jersey was refused by Louis F. Watson, Superintendent of Buildings; and
WHEREAS, an application was filed with the Board of Adjustment of the City of Atlantic City for a recommendation for a variance from the requirements of the zoning ordinance concerning the premises at 40 North Iowa Avenue, Atlantic City, New Jersey; and
WHEREAS, the requested variance is the extension of the use of the premises at 42 North Iowa Avenue as a gasoline service station so as to include the premises at 40 North Iowa Avenue; and
WHEREAS, it appears that the Board of Adjustment of the City of Atlantic City held a public hearing pursuant to law and after due consideration of the testimony and argument of counsel and on the evidence adduced at the hearing the Board of Adjustment concluded and recommended to the Board of Commissioners of the City of Atlantic City that for special reasons a variance should be allowed, *163 permitting the erection of a new gasoline service station on the premises known as 40 North Iowa Avenue, Atlantic City, New Jersey; and
WHEREAS, the basic facts found by the Board of Adjustment creating the special reasons for the variance were that a new, modern gasoline service station on the premises would enable all repairs, servicing and washing of automobiles to be done inside the building, whereas the work is presently being done outside the premises and that doing the work inside will eliminate noise, create a cleaner, more sanitary area and will also eliminate a traffic hazard and congestion in the streets adjacent to the service station; and
WHEREAS, on the basic facts found by the Board of Adjustment it determined the ultimate facts that the extension of the service station and the erection of a new, modern bay would promote the general welfare of the public, lessen the fire hazard and lessen congestion in the streets; and
WHEREAS, the Board of Commissioners of the City of Atlantic City is of the opinion that the said variance recommended by the Board of Adjustment is in accordance with the special reasons provided for by N.J.S.A. 40:55-39(d) and 40:55-32;
NOW, THEREFORE, BE IT RESOLVED by the Board of Commissioners of the City of Atlantic City that it finds the basic facts to be as follows:
1. The erection of a modern bay and the extension of the gasoline service station to include 40 North Iowa Avenue, Atlantic City, New Jersey, will lessen the concentration of traffic on the public streets in and around the premises and eliminate congestion therein by reason of the fact that the cars being serviced will now have room on the premises rather than being parked in and around the premises.
2. The erection of the modern bay will result in having the work done on the automobiles inside the building and thus result in a cleaner service station.
3. By reason thereof, the danger from fire will be lessened; and
BE IT FURTHER RESOLVED that by reason of the basic findings aforesaid the Board of Commissioners finds ultimate facts and special reasons under R.S. 40:55-32 satisfied (1) by lessening congestion in public streets, (2) securing safety from fire and other hazards and (3) promoting the general welfare of the public; and
BE IT FURTHER RESOLVED by the Board of Commissioners of the City of Atlantic City that the recommendation for a variance by the Board of Adjustment permitting the use of premises at 40 North Iowa Avenue, Atlantic City, New Jersey, as a gasoline service station be and the same is hereby APPROVED; and
BE IT FURTHER RESOLVED that the Board of Commissioners of the City of Atlantic City is of the opinion that the granting of such variance can be done without substantial detriment to the public good and without substantially impairing the intent and purpose of *164 the zoning plan and the zoning ordinance of the City of Atlantic City and its amendments;
BE IT FURTHER RESOLVED that the proper officer of the City of Atlantic City having authority in the matter is hereby authorized and directed to issue a permit for the said premises to be used as aforesaid."
Neither plaintiffs nor their attorney received any prior notice of the commissioners' intention to act on the recommendation on that date, nor were they notified by the city of the adoption of the aforesaid resolution.
Upon receiving notice of the granting of the variance, defendant O'Brien requested four contractors to submit bids on the proposed razing of the house at 40 North Iowa Avenue and the construction of the service station addition. That accomplished, he next obtained a mortgage loan of $15,000 for the project from the Boardwalk National Bank of Atlantic City and entered into a contract with the construction firm of Wochner and Reitenbaugh in the amount of $10,226 for the work. (Defendant Raymond Wochner is a partner in the above-named firm.)
On May 27, 1959 plaintiffs left Atlantic City and went to Indianapolis, Indiana. On May 29, 1959, 50 days after the adoption of the resolution which granted the O'Brien variance, work was begun on the demolition of the dwelling at 40 North Iowa Avenue. The razing was completed within four days and work was commenced immediately on the construction of the service station addition.
Plaintiffs returned to Atlantic City on June 4, 1959 and promptly learned of the work going forward at the O'Brien property. They at once consulted their attorney and on the same day, accompanied by him, visited the site of the work, saw O'Brien, and demanded that the construction work cease. O'Brien refused.
Plaintiffs and their attorney assert that they had no knowledge of the April 9, 1959 resolution of the board of commissioners until June 4, 1959. Their attorney obtained a copy of the resolution on June 5, 1959. The present action *165 was commenced on June 9, 1959, 61 days after the aforesaid action of the board of commissioners, and five days after plaintiffs allegedly first received notice thereof. The construction work was halted by a temporary restraining order issued by the trial court on June 9, 1959. Proofs showed that the value of the work completed by that date was $3,777.75. Despite the subsequent vacation of the restraint by reason of ultimate judgment against plaintiffs, no further construction work, we were advised at oral argument, has been undertaken by O'Brien.
On June 23, 1959, during the taking of a deposition of the secretary of the board of adjustment, the aforesaid loss of the transcript of the April 30, 1958 hearing on O'Brien's application, as well as the loss of the minutes of that meeting, was revealed. They are still unavailable. The only pertinent items found in the O'Brien file were copies of the July 15, 1958 letter from the board of adjustment to the plaintiffs' former attorney, the July 22, 1958 letter from the board of adjustment to the board of commissioners, recommending the variance, and the latter board's resolution of April 9, 1959.
As is noted, plaintiffs did not commence their action within the time provided in R.R. 4:88-15(b)(4) and, over defendants' objection, applied for an extension of the time limitation in accordance with R.R. 4:88-15(c). The trial court originally felt there was sufficient merit in plaintiffs' claim to justify an enlargement of the time but, after hearing the plaintiffs' case in its entirety, stated:
"Although at first glance it did appear that the interests of justice required an enlargement of the period of time, the closer examination made clear that the interests of justice did not so require."
However, the court did not dismiss plaintiffs' action as being out of time but held that, despite the loss of the minutes and of the transcript of the testimony taken at the board of adjustment hearing, it found sufficient evidence remained on which to base its judgment on the merits.
*166 Nevertheless, on this appeal defendants again, as stated, urge that no justification for the enlargement of the time pursuant to R.R. 4:88-15(c) existed. Defendant board of adjustment and defendant City of Atlantic City, invoking respectively R.R. 4:88-15(b)(3) and R.R. 4:88-15(b)(4), urge that we should dismiss plaintiffs' action as not timely instituted. We shall give initial consideration to this contention. Again the divergence in the respective contentions of the board of adjustment and the board of commissioners is emphasized in their argument against the enlargement of the time for the institution of the present suit. Despite their opposing views, defendants elected to present these divergent views in a joint brief to which all of the defendants have subscribed. The board of adjustment, contending that its action, of which plaintiffs were notified by the letter of July 15, 1958, was taken under N.J.S.A. 40:55-39(b), urges that the time within which plaintiffs might have sought court aid expired August 29, 1958; that it is intolerable to permit plaintiffs' action to be brought as late as June 9, 1959, nearly 11 months after the board acted. In contrast, the board of commissioners urges that the municipal action was taken pursuant to N.J.S.A. 40:55-39(d); that consequently the commencement of the period within which plaintiffs might bring their suit was April 9, 1959 (the date of the passage of its resolution). It then contends that the institution of plaintiffs' suit on June 9, 1959, 16 days after the expiration of the 45-day period, should not have been honored by the court under R.R. 4:88-15(b) (4). The board of adjustment urges that plaintiffs should have considered the July 15, 1958 letter as expressing a final action of that board and that the initially instituted suit, withdrawn in a few hours by plaintiffs' counsel, is proof that he, too, considered that the board action was a finality. Because thereof, defendants' joint brief argues, the "decision of plaintiff's [sic] attorney is fatal to the present action, not only in that the nature of the cause of action and the claim for relief is improper, but because of the change of position of *167 the defendant, O'Brien, which thereafter occurred * * *." The joint brief then adds:
"Unfortunately, the attorney for the plaintiff thereafter changed his mind as to the proper procedure, and deemed the action of the Board of Adjustment to be an interlocutory act, and therefore decided to wait upon the action of the Board of Commissioners of the City of Atlantic City. This decision appears to have affected the thinking of all counsel thereafter. * * *"
We refuse to follow such reasoning. The files of the board of adjustment disclose that seven days after July 15, 1958 it recommended to the city's governing body that a variance be granted. The latter acted thereon. Should this be ignored and the board of adjustment be sustained in its contention that plaintiffs be relegated to an attack on the earlier announced action reflected in the July 15, 1958 letter? We refuse to honor such a contention which, in effect, demands that plaintiffs be obliged to surmise which of the mutually exclusive actions of the board of adjustment is the one on which it truly relies, under the penalty that they are to be barred from relief in our courts if they guess incorrectly. It is only just to assay the July 22, 1958 board action as taken in substitution for that reflected in its July 15, 1958 letter, and to consider its action not as a finality, but as recommendatory only. As hereinafter more fully expressed, we determine that the action of the board of adjustment is to be considered as having been taken under N.J.S.A. 40:55-39(d), but, under the circumstances above outlined, we feel that it would be unjust to enforce the time limitation expressed either under R.R. 4:88-15(b)(3) as contended by the board of adjustment, or under R.R. 4:88-15(b)(4) as contended by the city. We view the trial court's aforesaid initial holding as properly invoking the relaxing provision of R.R. 4:88-15(c) in the "interests of justice." We believe that plaintiffs, in the instant case, met the applicable tests enunciated in Donovan v. Gabriel and Gruber, 57 N.J. Super. 542, 549 (App. Div. 1959).
*168 We next consider the basic reason stressed by the board of adjustment (although again projected in the joint brief of all defendants) that its action should be deemed to have been taken under N.J.S.A. 40:55-39(b). Under that section it contends that it is empowered to "hear and decide, in accordance with the provisions of any such ordinance, requests for special exceptions * * * or for decisions upon other special questions upon which such board is authorized by any such ordinance to pass." It then argues that the following provision under section VI of the zoning ordinance of the City of Atlantic City is pertinent:
"In Business Zones No[s.] 2 * * * no building or premises shall be used, and no building shall be erected or altered which is arranged, intended or designed to be used for any of the following specified trades, industries or uses:

* * * * * * * *
15. Motor Vehicle service or gasoline filling station, except as permitted by the Board of Adjustment."
It is further contended that the board of adjustment met and concluded that the "alteration and addition to the gasoline filling station * * * should be permitted"; and that "the ordinance of the City of Atlantic City, under the present situation, makes the action of the Board of Adjustment final and not subject to the consideration of the governing body."
Apart from the differences existing between "special exceptions" and "variances" as noted in Tullo v. Millburn Tp., 54 N.J. Super. 483, 490, 491 (App. Div. 1959), the complete answer to the contention of the board of adjustment in the case at bar is that its own course of conduct refutes its claim that its action was a finality under the aforesaid section of the zoning ordinance and the provisions of N.J.S.A. 40:55-39(b). Even with the meagre record before us it is clear that the board of adjustment considered the application as one for a "variance" made under N.J.S.A. 40:55-39(d). It characterized it as a "variance" in *169 its abortive letter of July 15, 1958. Its aforesaid letter of July 22, 1958 to the board of commissioners states: "After considering all of the testimony the Board of Adjustment unanimously recommends to the governing body of the City of Atlantic City that a variance should be allowed * * *." (Emphasis supplied.) Defendants will not now be heard to assert, as they do in their joint brief, that the action of the board of adjustment was "final and not subject to the consideration of the governing body" and that its "action need not be passed upon by the City Commission."
We conclude that the trial court properly considered (as did the board of commissioners) that the O'Brien application was made pursuant to N.J.S.A. 40:55-39(d). The municipality will not be permitted to ignore the true nature of the sequence of events initiated by the letter of July 22, 1958 and now to claim that the commissioners' resolution was not a definitive step under the statute but is to be utilized merely as supportive of the board of adjustment action.
Finally we consider the main question projected by this appeal, viz., whether or not the resolution adopted by the city on April 9, 1959 should be set aside as not supported by proofs sufficient to meet the standards prescribed by N.J.S.A. 40:55-39(d). The trial court held that despite the loss of the minutes of the meeting of the board of adjustment, and despite the loss of the transcript of the testimony taken at the hearing of that body, it found sufficient in the record to justify its conclusion that the board of adjustment was warranted in recommending the variance in question. It held that the contents of the aforesaid communication of July 22, 1958 from the board of adjustment to the board of commissioners, the latter's resolution of April 9, 1959, and the aforesaid letters of counsel afforded "substantial evidence upon which the Board could properly have based its decision," and that it deemed "the record sufficient to permit this court to determine the correctness or incorrectness of the action of the Board."
*170 Starting "with the fundamental proposition that the action of the board of adjustment in recommending the variance and the action of the board of commissioners in granting the variance is presumed to be correct," the court held that the board of adjustment, in its recommendation to the board of commissioners, justifiably concluded "that a modern gas station could be erected on the premises without substantial detriment to the public good and that the use permitted by the variance would not substantially impair the intent and purpose of the zoning plan and zoning ordinance * * *." The court noted that the board of commissioners originally had before it the minutes of the meeting and the transcript of the testimony adduced before the board of adjustment, to whose secretary the commissioners returned that record, and held that the recommendation of the board of adjustment and the resolution of the governing body sufficiently outlined the "special reasons" justifying the variance. The court then held that the "determination as to the circumstances which will constitute special reasons is committed to the quasi-judicial discretion of the board of adjustment under the supervisory discretion (which seems to partake of both the judicial and legislative) of the local governing body, to be exercised favorably to the relaxation of the restraint imposed only when it can be done without substantial detriment to the public good and without substantially impairing the intent and purpose of the zone plan and zoning ordinance." The court alluded to the "business uses" of the neighboring properties, which uses were outlined in the affidavit by O'Brien submitted on the hearing in the trial court, and held that such uses "play a part in the total circumstances pointing in the direction of the statutory special reasons," and that all of the circumstances "sufficiently qualify as special reasons within the authority granted by the Legislature to require the conclusion that the plaintiffs have failed to demonstrate arbitrary, unreasonable, erroneous or illegal action by either the board of adjustment or the board of commissioners."
*171 During the course of its opinion the court observed that it was mindful of the fact that "the cause could be remanded in order to set forth with particularity all the happenings below," but that it deemed such course unnecessary.
The difficulty with assessing the propriety of the recommendation of the board of adjustment and its approval by the governing body lies in the fact that in its communication of July 22, 1958 the board of adjustment specifically referred to the aforesaid hearing and to the testimony presented by O'Brien "setting forth reasons for the allowance" of the variance. Its recommendation was said to be made after "considering all of the testimony," and that the board's action represented "the unanimous decision and consent of the three members of the Board of Adjustment who were present and heard all of the evidence for and against the variance." Furthermore, the resolution of the board of commissioners recited the public hearing conducted by the board of adjustment and the latter board's "due consideration of the testimony," and that said board of adjustment "on the evidence adduced at the hearing" concluded and recommended "that for special reasons a variance should be allowed * * *." Its resolution then recited what it labeled as the basic facts "found by the Board of Adjustment creating the special reasons for the variance," and further recited that "on the basic facts found by the Board of Adjustment it determined the ultimate facts that the extension of the service station and the erection of a new, modern bay would promote the general welfare of the public, lessen the fire hazard and lessen congestion in the streets." The board of commissioners then resolved that the recommendation for the variance should be approved because of the basic findings of the board of adjustment.
We deem it impossible to determine the legal propriety of the board of adjustment's conclusions, assertedly based on its assessment of the evidence taken for and against the proposed variance at the public hearing, when that evidence and the minutes reflecting the events of that hearing *172 are unavailable for review. It is upon such record that the "admeasurement of the legality" of the municipal action must be tested. Izenberg v. Bd. of Adjustment of Paterson, 35 N.J. Super. 583, 588 (App. Div. 1955). Accord, Kempner v. Edison Tp., 54 N.J. Super. 408, 416 (App. Div. 1959). The fact that the loss of these fundamental records was inadvertent does not alter the resultant consequences. That they are not available and therefore cannot be scrutinized and assayed is the crucial factor. The recitals in the July 22, 1958 letter and in the April 9, 1959 resolution, utilized by the trial court, are at the most statements by the respective boards of their findings allegedly based on the evidence asserted to have been presented at the hearing before the board of adjustment. The justification for those findings is not inherent in those recitals. Whether the findings were or were not supported by the evidence adduced at the hearing is lodged in a record no longer available. We recognize that under R.S. 40:55-38 the taking of a stenographic record at the hearing is not required, Izenberg, supra, 35 N.J. Super., at page 594, but "the need for factual support in the record is fundamental and indispensable." Izenberg, 35 N.J. Super., at page 593. Here not only the transcript of the stenographic record, which was made, but the minutes of the board's meeting, are missing.
In Kempner, supra, 54 N.J. Super., at page 413, in which the court was called upon to review the denial of a recommended variance sought pursuant to N.J.S.A. 40:55-39(d), it was noted that "[n]o stenographic record was made of the proceedings before the board of adjustment, nor were any minutes of the proceedings kept by said board." The sole record of the proceedings before that board of adjustment consisted of its resolution. The court stressed that "the record made before the board is essential to an enlightened determination by the governing body" and, finding that such record was absent and the resolution did not supply the necessary factual basis, remanded the matter to the board of adjustment.
*173 The trial court expressed the view that the Kempner case was not controlling because there a basic record had never existed, while in the case at bar the record had been made and subsequently lost. The court stressed that the board of adjustment in the instant case had the transcript of the testimony and the minutes in its file at one time and that plaintiffs' counsel on his aforesaid initial inspection of that file saw those records and that the board of commissioners had such records before it and returned them. These factors do not change the basic situation presented to the trial court and to us on appeal in the case at bar. The crucial situation is that we are called upon, as was the trial court, to determine the justification for the municipal action on a record which cannot be submitted for scrutiny.
The defendants contend in their brief that the "amplification of the record, if necessary, was the burden of the plaintiff," but we are not here dealing with an incomplete record which needed amplification as in Izenberg, supra, and Tomko v. Vissers, 21 N.J. 226 (1956). Here there is no factual record available, and its unavailability is no fault of plaintiffs.
Defendants further urge that "presumptively the action of the Board of Adjustment and of the City Commission is legal and correct * * *." It is well established that where "the application for variance has been given careful and conscientious consideration by the zoning board and the town council and has been acted upon by both of them in strict conformity with the procedural and substantive terms of the statute, the ultimate interests of effective zoning will be advanced by permitting the action of the municipal officials to stand, in the absence of an affirmative showing that it was manifestly in abuse of their discretionary authority." Ward v. Scott, 16 N.J. 16, 23 (1954).
The situation on the instant appeal, however, is that in view of the unavailability of the basic records, we are in no position to determine whether there has been "strict conformity with the procedural and substantive terms of *174 the statute," nor are we able to determine whether the municipal action was arbitrary, capricious or a manifest abuse of discretionary authority.
The cause is remanded to the board of adjustment for a de novo hearing, as on an original application.